487 A.2d 360

LeGARE, INCORPORATED, Appellee,

v.

BROOKHAVEN RESIDENTIAL SALES,
INCORPORATED, Appellant.

BROOKHAVEN RESIDENTIAL SALES,
INCORPORATED, Appellant,

v.

LeGARE, INCORPORATED, Appellee.

LeGARE, INCORPORATED, Appellant,

v.

BROOKHAVEN RESIDENTIAL SALES,
INCORPORATED, Appellee.

BROOKHAVEN RESIDENTIAL SALES,
INCORPORATED, Appellee,

v.

LeGARE, INCORPORATED, Appellant.

Superior Court of Pennsylvania.

Argued July 12, 1984.

Filed Jan. 4, 1985.

Petition for Allowance of Appeal Denied June 7, 1985.

C. Steven Miller, Allentown, for Brookhaven, appellant (at 107 and 108) and for appellee (at 109 and 110).

Michael Prokup, Allentown, for Legare, appellant (at 109 and 110) and for appellee (at 107 and 108).

Before WIEAND, OLSZEWSKI and POPOVICH, JJ.

WIEAND, Judge:

Brookhaven Residential Sales, Inc. (Brookhaven) contracted with LeGare, Inc. (LeGare) to construct eight condominium-type residences on a development tract of land owned by LeGare and known as Kinderwood in Easton, Northampton County. The written agreement provided for periodic

payments and required that construction be completed in accordance with a time schedule therein set forth. Completion of the project was late by approximately a year. LeGare commenced an action for damages allegedly caused by the delay; and Brookhaven filed a separate action to recover the balance due according to the terms of the contract. The two actions were consolidated for trial and tried without jury before the Honorable Richard D. Grifo. The court found that Brookhaven was entitled to recover a balance due under the contract in the amount of $53,054.70. It also found that LeGare had sustained damages because of Brookhaven's late performance in the amount of $53,415.74. Exceptions filed by both parties were dismissed by the court en banc, and separate judgments were entered on the verdict in the amounts found by the court. Both parties appealed from the two judgments. Brookhaven contends that the trial court erred in finding that it was liable for delay which, it argues, was caused either by LeGare's inaction or conditions beyond Brookhaven's control. LeGare argues that the trial court erred in refusing to award damages for lost profits caused by changed market conditions.

"[T]he findings of fact of a trial judge, sitting without a jury, sustained by the court en banc, have the force and effect of a jury's verdict, and, if based on sufficient evidence, will not be disturbed on appeal." *Girard Trust Bank v. Sweeney*, 426 Pa. 324, 330, 231 A.2d 407, 411 (1967). See also: *In re Miller*, 301 Pa.Super. 511, 515, 448 A.2d 25, 27 (1982). We focus, therefore, on whether the trial court's findings were supported by competent evidence.

The plan of Kinderwood called for residences to be built on the side of a wooded, rocky and steep hill overlooking the Delaware River. Brookhaven's representatives, with site plan in hand, had made an inspection of the site before entering the construction agreement. Paragraph 16 of the agreement provided as follows:

16. The work to be performed under this agreement shall be commenced within ten (10) days notice after execution of this agreement, and the first unit shall be ready for occupancy within 240 calendar days thereafter with each subsequent unit to be completed within fourteen (14) day intervals thereafter, unless the Contractor is delayed at any time in the progress of the work by any act or neglect of the Owner or by unavoidable casualties or any causes beyond Contractor's control.

The first unit was scheduled for completion on or before February 15, 1978. Although the work started promptly, Brookhaven encountered rock, cold weather, lack of maneuverability for its equipment, and a lack of space in which to store excavated rock until it could be used in the construction of residence foundations. Although all contributed to the delay, it was the rock which posed the greatest problem. The court, after reviewing the entire contract, concluded that the presence of rock had been anticipated by the parties, that Brookhaven had assumed the risk of removing the rock within the time constraints of the contract, and that rock removal was not a cause "beyond [the] Contractor's control" as that phrase was understood by the parties.

 In construing a contract, the intention of the parties must be ascertained from the entire agreement, taking into consideration the surrounding circumstances. *Mather Estate*, 410 Pa. 361, 366–367, 189 A.2d 586, 589 (1963). In the instant case, Brookhaven's president conceded that his site inspection had disclosed a steep terrain, heavily wooded, with outcroppings of rock and boulders, and that he had been aware that rock would be encountered. Therefore, there was included in the written contract a specific provision establishing the manner in which the contractor was to be compensated for rock excavation. This evidence, coupled with the fact that the agreement did not expressly recognize excavation of rock as an excuse for delay, confirms the trial court's finding that neither the presence of rock nor the need to excavate it was intended by the parties to excuse performance within the times required by the

agreement. The court could properly conclude, therefore, that the presence of rock was not a "cause beyond the Contractor's control" within the meaning of paragraph 16.

Brookhaven also argued that delay had been caused by minor errors in LeGare's site plan and because of LeGare's post-contract request that trees in close proximity to the building site be preserved. The trial court found, however, that the errors in the plan had been corrected early during construction and had not contributed causally to Brookhaven's late performance. Similarly, the court found that the inconvenience to the contractor caused by LeGare's desire to retain certain trees was de minimus and was not responsible for a year's delay in completing construction. In this respect, the court found that an intent to retain trees had been expressed pre-contract by LeGare and had been included in the architect's plans. Thus, Brookhaven had been aware of LeGare's desire to preserve as many trees as possible prior to executing the agreement. The precise trees to be retained were in fact left to Brookhaven's discretion, and decisions with respect thereto were made according to the needs of its subcontractor. The evidence supports the court's findings, and they will not be disturbed.

■ The court found that as a result of delay caused by Brookhaven, LeGare had sustained damages as follows:

| | |
|---|---|
| Increased cost for paving and curbing | $ 3,650.31 |
| Increased cost of landscaping | 1,028.43 |
| Increased construction costs | 21,266.28 |
| Increased cost of utility installation | 27,470.52 |
| | $53,415.54 |

Brookhaven contends that the evidence failed to support the trial court's finding that the increased cost of utility installation had been caused by Brookhaven's delay in construction. Our review of the record compels us to agree with this contention.

The utility installation was to be performed by New Enterprises Construction Co., which had a separate contract with LeGare. Although it had been initially contemplated that the work of Brookhaven and New Enterprises would

be done simultaneously, it was subsequently agreed that the work of New Enterprises could better be done after Brookhaven's work was complete. It was agreed, therefore, that New Enterprises would commence work after four units had been completed and within ten days after receiving notice from the owner. When LeGare called upon New Enterprises to perform, the latter, in breach of its contract, failed or refused to perform. Therefore, LeGare was compelled to have the work of utility installation done by another at an increased price. Although the evidence demonstrated that LeGare's notice to New Enterprises to begin work was later than had been anticipated, there was no evidence that New Enterprises' failure to perform its contract with LeGare had been caused by Brookhaven's delay in completing its work.[1] The court en banc recognized this deficiency in LeGare's proof but concluded that the trial court could nevertheless infer from the total circumstances that Brookhaven's delay may have contributed to the failure of New Enterprises to perform. This was error. There was neither direct nor circumstantial evidence from which the fact finder could properly find that Brookhaven had been responsible for New Enterprises' breach of contract. See and compare: *Macchia v. Megow*, 355 Pa. 565, 50 A.2d 314 (1947). The damages recoverable for that breach may be recoverable from New Enterprises, but the record in this case does not permit recovery of those damages from Brookhaven. LeGare's recovery in this action, therefore, must be reduced by $27,470.52.

■ LeGare also failed to show with reasonable certainty that it had sustained a loss of profits because the marketing of residential units had been delayed for a year. The record discloses many possible explanations for LeGare's inability

1. LeGare's effort to prove a causal connection rested upon hearsay evidence which, upon objection, the trial court properly excluded. The only other reference to this aspect of LeGare's claim appeared in a letter prepared by its counsel in which he made the bald and unsupported accusation that because of Brookhaven's delay, LeGare "has found it necessary to obtain the services of another contractor to install sewer lines."

to market the project as planned. Thus, the trial court could properly conclude, as it did, that a claim for anticipated profits was entirely speculative and unsupported by credible evidence.

The judgment in favor of Brookhaven is affirmed. The judgment in favor of LeGare is reduced to $25,945.02 and as so modified is affirmed.

POPOVICH, J., files a concurring and dissenting statement.

POPOVICH, Judge, concurring and dissenting:

I dissent to the majority's reduction of the judgment which was entered in favor of LeGare, Incorporated, and would affirm on the basis of the trial court's opinion.