**In re JEANNETTE CORPORATION, t/a Jeannette Glass, Debtor.**

**A.Z. HOLDINGS CORPORATION, Plaintiff,**

**v.**

**James E. MOODY, Trustee for Jeannette Corporation, Defendant.**

**Bankruptcy No. 82–3265–BM.
Adv. No. 90–0552–BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Aug. 16, 1991.

Owen W. Katz, Bernstein and Bernstein, P.C., Pittsburgh, Pa., for plaintiff.

David P. Braun, Campbell & Levine, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Plaintiff A.Z. Holdings Corporation (hereinafter "AZ") seeks an Order directing the trustee to turn over to it accounts receivable, refunds, all or a portion of the proceeds of the settlement of a claim filed by debtor in another bankruptcy proceeding, and shares of stock allegedly held by the trustee.

AZ asserts that these items are included among debtor's assets which it purchased from the trustee in this bankruptcy proceeding. The trustee concedes that the accounts receivable are included among the assets purchased by AZ but resists turnover of other items.

The trustee will be directed, in accordance with the reasoning set forth below, to turn over to AZ all accounts receivable in his possession, plus interest from the date(s) when said funds were received by the trustee. The trustee will not be directed to turn over the items designated "refunds", as no credible testimony was offered proving that "refunds" were in fact "prepaid expenses" or "deposits". In addition, the trustee will not be directed to turn over the proceeds of the settlement relating to the proof of claim or any shares of stock in his possession, as it appears clear to the court that the parties did not intend said items to be included in the original transaction.

## —I—
## FACTS

The trustee was appointed on July 27, 1983. The order of appointment directed him to:

... conduct a public sale of all of the Jeannette Glass Division assets, including but not limited to: real estate, leasehold interests, machinery, equipment, inventory, molds, dies, deposits, pre-paid expenses, accounts receivable, notes receivable due Jeannette Corporation and/or non operating subsidiaries, books, records, customer lists, trade marks and trade names....

Shortly after his appointment, the trustee filed a Complaint To Sell Property By Public Sale, Free And Clear Of Liens, Claims And Union Contracts. Paragraph 11 provided that the trustee would file with the court, prior to hearing on the Complaint, a property list which itemized and described the property to be sold. Paragraph 14 stated that, in general, the personal property to be sold consisted of: molds; machinery and equipment; inventory; trade receivables; notes receivable; motor vehicles; trademarks; copyrights; trade name; and "miscellaneous".

Prior to hearing on the Complaint, the trustee filed a Property List with the court which itemized and described the property to be sold. The Property List also contained a category of property designated as "miscellaneous", which provided as follows:

## MISCELLANEOUS

None. However, the Trustee reserves the right to include additional property, of which he is now unaware, at the time of the sale. This additional property is not expected to be substantial.

Sale of debtor's assets for $2,350,000.00 was confirmed by the court on September 29, 1983. Confirmation was made subject

to the terms and conditions set forth in the Asset Purchase Agreement. The court took notice in Paragraph 1 of the Property List and found that it contained adequate disclosure of the nature and identity of the property being sold. The court took notice in Paragraph 5 of the Appendix to said Property List and found that it contained "... adequate disclosure of the particular property described in the Property List which, in fact, is not included in the sale...."

That same day, the trustee and the purchaser executed the Asset Purchase Agreement. Paragraph 2.b provided that the trustee would, on the date of closing, transfer all of the trustee's right, title, and interest to the following personal property: *Personal Property.* All the following personal property of the Jeannette Glass Division, as more fully identified in the Property List ...: Molds, Machinery and Production Equipment, Office Furniture and Equipment, Inventory, Trade Receivables, Notes Receivable, Motor Vehicles, Trademarks, Copyrights, Trade Name and Miscellaneous.

The closing on the sale took place on November 3, 1983. The Bill of Sale executed by the trustee recited the various kinds of property being sold. Included were various molds, machinery and production equipment, office furniture and equipment, inventory, and:

(e) All other property of Seller as set forth in the Agreement, whether tangible or intangible, as located on or used in connection with the operation of the business of Jeannette Corporation, including but not limited to accounts receivable, notes receivable, patents, licenses, contracts, trademarks, goodwill and copyrights.

On April 30, 1984, debtor filed a claim in the amount of $14,000,000.00 against Royal China Company, a wholly-owned subsidiary of debtor, filed at Bankruptcy Case No. 83–1750. Of the total amount of the claim, $2,500,000.00 was based upon alleged unpaid advances by debtor to Royal China. The remaining $11,500,000.00 was based upon debtor's alleged right to contribution with regard to a joint line of credit for which debtor and Royal China were co-obligors. The claim eventually was settled for $550,000.00.

Subsequent to the closing on November 3, 1983, the trustee received $45,900.61 in accounts receivable and $25,088.57 in various refunds.

—II—

## ANALYSIS

It is a cardinal rule of contract construction that the intention of the parties at the time a contract is entered into is controlling. *Ress v. Barent,* 378 Pa.Super. 397, 548 A.2d 1259, 1262 (1988). The intention of the parties is to be ascertained from the entire agreement, taking into consideration surrounding circumstances. *LaGare, Inc. v. Brookhaven Residential Sales, Inc.,* 337 Pa.Super. 478, 487 A.2d 360, 362 (1985). The court is required to adopt an interpretation which ascribes the most reasonable, probable, and natural conduct to the parties. *Walton v. Phila. National Bank,* 376 Pa.Super. 329, 545 A.2d 1383, 1388 (1988).

### A.) *Accounts Receivable.*

AZ argues that it is entitled to $45,-900.61 in accounts receivable which the trustee has recovered plus interest from the date(s) of their receipt by the trustee. The trustee has conceded that AZ is entitled to the funds.

AZ's position is supported by the various documents described previously. The Property List, which itemized and described the property to be sold, included overdue trade receivables valued at $412,-560.05 as of August 7, 1983. The $45,-900.61 which AZ seeks to recover represents that portion of overdue receivables recovered by the trustee.

The trustee will be directed to turn these receivables over to AZ along with interest at the legal rate from the date(s) they were received by the trustee.

## B.) *Refunds.*

■ AZ argues that it is entitled to $25,088.57 in refunds which the trustee has recovered plus interest from the date(s) of their receipt by the trustee.

It was determined previously at Adversary No. 90–027–BM that AZ was entitled to a boiler fuel refund under the terms of the Asset Purchase Agreement and Bill of Sale. The reasoning set forth in this court's Memorandum Opinion issued on May 21, 1990 applies with equal force to the issues at issue. The parties initially determined that "deposits and prepaid expenses" were to be sold. Thereafter, they deleted these designations and inserted "misc.". It appeared reasonable to the court that under these facts and circumstances the parties intended "misc." to mean deposits and prepaid expenses. There it appeared clear to the court that the "boiler fuel refund" was in fact a deposit and/or a prepaid expense.

In the case at hand, the evidence offered designated various items as "refunds", but no credible evidence was offered which would lead the court to conclude that the "refunds" herein were in fact prepaid expenses or deposits. Plaintiff failed to meet its burden of proof.

## C.) *Settlement Proceeds.*

■ AZ maintains that it is entitled to all or at least a portion of the proceeds of the settlement of debtor's $14,000,000.00 claim against Royal China. AZ claims that it purchased all of debtor's causes of action, including the claim against Royal China, and therefore is entitled to all of the proceeds derived from the settlement of the claim. Alternatively, AZ argues that that portion of debtor's claim which was based upon alleged unpaid advances by debtor to Royal China ($2,500,000.00) constitutes an account receivable which it purchased from the trustee. According to AZ, it therefore is entitled to $98,214.29 of the settlement proceeds ($2,500,000.00/$14,000,000.00 × $550,000.00 = $98,214.29). Both of these contentions are without merit.

It was not the intention of the parties to the Asset Purchase Agreement that causes of action belonging to debtor were included among the assets being sold.

Causes of action are not expressly included among the types of personal property set forth in the Asset Purchase Agreement, the Property List, or the Bill of Sale. Moreover, examination of the relevant documents compels the conclusion that the claim against Royal China was not included in the category denominated "miscellaneous" which appeared in the Property List and in the Asset Purchase Agreement.

The latter category was not intended as a residual category designed to include all of debtor's property not otherwise specifically identified or not otherwise specifically excluded. Not all of debtor's property was sold by the trustee to AZ. The court found in Paragraph 5 of the Order of September 29, 1983 confirming the sale that the Appendix to the Property List contained "... adequate disclosure of the particular property described in the Property List which in fact, is not included in the sale ..." (emphasis added). Moreover, it is stated in the Property List that nothing was included in this category at that time and it was expected that nothing of substantial value would be included therein.

It is apparent from its inclusion on the very last page of the Property List and from the remarks it contains that the trustee, out of an abundance of caution, was indicating that the assets to be sold might include other items of insignificant value which the trustee otherwise may have failed to itemize and describe due to oversight or inadequate information. The settlement proceeds of $550,000.00 to which AZ claims entitlement are not of insignificant value, especially when it is considered that the total purchase price for debtor's assets was $2,350,000.00. The parties to the Asset Purchase Agreement did not intend for "miscellaneous" to include unspecified assets which value represents approximately one-quarter of the total purchase price.

■ AZ's contention that it is entitled to at least a portion of the settlement proceeds is also without merit. There is no

basis for holding that the $2.5 million portion of the claim against Royal China constituted an account or trade receivable. The Proof of Claim stated only that this portion of the claim was based upon "unrepaid intercompany advances made to the Debtor by Jeannette, its parent ..." In addition, the settlement of the claim did not allocate the proceeds between the two parts of the claim. It is as likely that the entire settlement was allocated to the portion of the claim pertaining to debtor's alleged right to contribution as it is that a portion of the proceeds was allocated to that portion of the claim for unpaid intercompany advances. The court is without any basis for allocating the proceeds of the settlement between the two portions of the claim against Royal China.

D.) *Shares of Stock.*

■ AZ is not entitled to any shares of stock held by the trustee for much the same reason that it is not entitled to any of the proceeds of the settlement of the claim against Royal China.

No reference is made to shares of stock in the Asset Purchase Agreement, the Property List, or the Bill of Sale. Moreover, it was not the intention of the parties to the Asset Purchase Agreement that any shares of stock held by the trustee were included in "miscellaneous". Considering the potential value of the shares, it strains at credulity to maintain that the parties intended for "miscellaneous" to include any shares of stock. Had it been their intention to include them among the assets being sold, one would expect them to be itemized and described with the specificity accorded other items on the Property List.

An appropriate Order shall be issued.

## ORDER OF COURT

AND NOW at Pittsburgh in said District this 16th day of August, 1991, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that James E. Moody, Trustee, turn over to A.Z. Holdings Corporation the sum of $45,900.61 in accounts receivable plus interest at the legal rate from the date(s) said accounts receivable were received by the trustee.