## Macchia, Appellant, *v.* Megow.

Argued December 5, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused January 28, 1947.

*William A. Gray*, with him *Joseph N. Bongiovanni, Jr.*, and *S. Walker Foulkrod, Jr.*, for appellant.

*Henry Thomas Dolan*, with him *Philip C. Herr*, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 6, 1947:

We are here concerned with the factual and legal merits of a counterclaim presented by defendant in this action.

On April 14, 1944 defendant sent to plaintiff a purchase order for 92,300 sets of molded tool parts, to be manufactured in accordance with certain specifications, for the price of 19 cents per unit. Defendant, on April 11, 1944, had received from Randolph Tool Equipment

Corporation an order for that number of tools which were to be made up of the sets to be furnished by plaintiff in conjunction with parts to be supplied by other manufacturers and were intended for the use of the United States Army Signal Corps in connection with radio or radar apparatus; the price was 55 cents per tool. Before accepting this order defendant had received orally from plaintiff the 19 cents quotation for the parts which plaintiff was to supply. Defendant's written order to plaintiff did not specify any dates for deliveries but he alleges that plaintiff gave him certain assurances in that regard.

The present action of assumpsit was brought to recover (1) the agreed-upon price for 14,058 sets of the tool parts which plaintiff delivered and which were accepted by defendant; (2) the cost of certain extra work in remanufacturing, assembling and shipping some of the parts; (3) the damages caused by defendant's alleged breach of the contract in failing to make stipulated payments as a result of which plaintiff discontinued further shipments. Defendant denied that it was he who breached the contract, asserted that, on the contrary, it was plaintiff who was in default by failing to make deliveries within the times promised by him or at least within a reasonable time, and claimed that because of such default on the part of plaintiff the Randolph Corporation cancelled its contract. He admitted liability in the amount of $2,163.91 for tool parts which he had accepted (but stated by him to number only 11,389); as against this sum he pleaded a counterclaim consisting of three items:—one of $8,091.10, representing an alleged loss of profits he would have made under his contract with the Randolph Corporation had it not been cancelled; a second item of $3,725.59, being part of the amount he had paid to plaintiff for the molds necessary for the manufacture of the tool parts; and a third item of $2,387.31, being the loss alleged to have

been sustained by him by reason of his purchase from other parties of materials and tool parts needed to carry out his contract with the Randolph Corporation but not used because of the cancellation of that contract. These items make a total of $14,204.

The court below, sitting without a jury, limited plaintiff's recovery on his own claims to $3,438.55 but sustained defendant's counterclaim of $14,204 and accordingly gave judgment for defendant in the sum of $10,765.45. On the present appeal from that judgment plaintiff complains only of the allowance of the counterclaim.

In entering the judgment as it did the court below erred from the standpoint of both facts and law. While the findings of fact by a judge hearing a case without a jury under the Act of April 22, 1874, P. L. 109, are entitled to the same weight and effect as the verdict of a jury, there must, of course, be evidence to support them: *Armstrong County v. Rearic,* 315 Pa. 133, 172 A. 130; *Meitner v. Scarborough,* 321 Pa. 212, 215, 184 A. 81, 82; *Perletto v. Lancaster Avenue Building & Loan Association,* 353 Pa. 366, 370, 45 A. 2d 10, 13. Here there is no testimony that we have been able to discover which justified the trial court, after finding that it was plaintiff who defaulted under the contract, in concluding that that default was the cause of the cancellation by the Randolph Corporation of its contract with defendant, the burden to prove which was upon the latter in order to support his counterclaim for damages. The only testimony on the subject was by a Mr. Eggert, defendant's purchasing agent, who says that he told plaintiff in August and again in December 1944 that there was danger of such cancellation due to nondelivery, but there is not a word tending to establish that the cancellation, which occurred on January 23, 1945, was in fact due to failure on the part of plaintiff to make timely deliveries to defendant. Defendant did

not produce any witness from the Randolph Corporation to testify to that effect, nor did he himself testify to any conversations or written communications with the Randolph Corporation serving to show how its contract came to be cancelled and for what reason; the alleged relationship of cause and effect between plaintiff's default and the Randolph Corporation's cancellation had to be supported by proof, and there is nothing in the present record from which such an inference can be drawn with sufficient certainty to satisfy legal requirements as distinguished from mere guess or suspicion. And even if that fact *had* been shown, defendant would still not be entitled to recover on its counterclaim because of the well established rule that "Damages for which compensation may be justly claimed and allowed are such only as naturally and ordinarily flow from the breach of contract complained of. They should be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, or as such as might according to the ordinary course of things be expected to follow its violation": *Billmeyer, Dill & Co. v. Wagner*, 91 Pa. 92, 94; *Hutchinson v. Snider*, 137 Pa. 1, 6, 7, 20 A. 510, 511; *Spiese v. Mutual Trust Co.*, 258 Pa. 422, 426, 102 A. 121, 122, 123; *Raby, Inc. v. Ward-Meehan Co.*, 261 Pa. 468, 471, 472, 104 A. 750, 751. Anticipated profits on a resale are not recoverable unless in contemplation of the parties when the original contract was made: *Seward v. Pennsylvania Salt Manufacturing Co.*, 266 Pa. 457, 462, 109 A. 617, 618; *Popkin Bros. v. Dunlap,* 130 Pa. Superior Ct. 50, 54, 55, 196 A. 586, 588. "Parties, when they enter into contracts, may well be presumed to contemplate the ordinary and natural incidents and consequences of performance or non-performance; but they are not supposed to know the condition of each other's affairs, nor to take into consideration any existing or contemplated transactions, not communicated nor known, with other

persons. Few persons would enter into contracts of any considerable extent as to subject-matter or time if they should thereby incidentally assume the responsibility of carrying out, or be held legally affected by, other arrangements over which they have no control and the existence of which are [sic] unknown to them": Sutherland on Damages, 4th ed. vol. 1, p. 182, §47.

While plaintiff no doubt knew that the parts which he was furnishing to defendant were to be used by the latter in the manufacture of tools for the United States Army Signal Corps, there is no evidence that any specific information was given to him at or prior to the time when his contract with defendant was entered into as to the terms of the latter's contract with the Randolph Corporation and especially its provisions concerning the time within which defendant agreed to supply the tools; indeed if plaintiff had examined that contract it would have revealed that time of delivery was not expressly made of the essence and there is no evidence that plaintiff saw or knew of the existence of a letter from the Randolph Corporation to defendant written at the time of the execution of their contract in which there was stressed the importance of defendant's complying with the schedule of deliveries which that contract provided. There is therefore nothing in the evidence to establish that plaintiff was obliged to have in mind that a failure on his part to make deliveries within any given time would involve defendant in the cancellation of another contract and cause him a large resulting loss of profits. As a matter of fact, plaintiff quoted his price of 19 cents to defendant *before* the latter entered into the contract with the Randolph Corporation. Profits arising from a subsequent contract, or out of collateral undertakings, although made on the faith of the original contract and capable of definite ascertainment, are not recoverable in an action for the breach of the original contract: *Clyde Coal Co. v. Pittsburg &*

*Lake Erie R. R. Co.,* 226 Pa. 391, 75 A. 596. From every legal angle, therefore, even if defendant had proved that the cancellation of his contract with Randolph Corporation was due to plaintiff's alleged breach of his contract with defendant—which proof was wholly lacking—defendant cannot hold plaintiff liable for the kind of damages asserted in his counterclaim.

The judgment is reversed and is here entered for plaintiff in the sum of $3,438.55.