186 P.2d 386

**STEVENS et al. v. MITCHELL.**

No. 5037.

Supreme Court of New Mexico.

Oct. 14, 1947.

As Modified Nov. 10, 1947.

412

O. O. Askren, of Roswell, for appellant.

G. T. Watts, of Roswell, for appellees.

COMPTON, Justice.

This is a suit by appellees to recover the purchase price of certain cattle, as a first cause of action, and for damages resulting from breach of contract to move the cattle out of the state as a second cause of action. The jury found for appellees and judgment was entered pursuant thereto. From the judgment on the second cause of action appellant brings this appeal and assigns as error: "The Court erred by giving to the jury Instruction No. 5, and submitting to the jury the issue of the alleged damage under the Second Cause of Action, over the objection of the defendant, because there was no substantial evidence in the case to furnish any measure of damage; all the testimony on the subject was purely speculative and not sufficient to support the verdict."

Appellees were engaged in ranching in New Mexico, with ranches in Lea and Chaves Counties. On or about September 20, 1945, appellees sold to appellant about 650 head of cattle, consisting of cows, calves, yearlings and bulls, for a designated price. It was agreed at the time that appellant would move all of the cattle out of the State of New Mexico, so as to avoid confusion by commingling with cattle which appellees retained upon their ranches. Appellant not only failed to move the cattle, as agreed, but on the contrary, placed them upon a ranch about 30 or 35 miles from the ranch of appellees. At the time of trial, however, all of the cattle had been moved out of the state, except about 15 head. There is no evidence that this remnant commingled in any manner with the cattle of appellees.

The evidence as to damages is the testimony of appellees, John Stevens and Jessie W. Stevens, and the witnesses, Carl Sams and Albert Buchanan.

John Stevens testified as follows:

"Q. How long did they remain on that ranch before they were taken out? A. I could not say just exactly; they were there a few months, however; several months.

"Q. How much have you been damaged by these cattle being left in this country, Mr. Stevens? A. We have estimated it at least—we said we would not have sold them for less than $10,000.00 more; it would have made that much difference.

"Q. Except from hearsay, you don't know where these cattle are? A. No.

"Q. Whether they are in the state or out of the state? A. No; I don't know.

"Q. How have you been damaged $10,-000.00 by reason of the fact—you see, you have sued us on a counter claim for $5,-000.00; how have you been damaged? A. Any cowman can tell you what damage that will do to a man.

"Q. What is your best judgment now on your second cause of action, regardless of the price of these cattle, how much have you been damaged by reason of the fact that cattle were not moved out of the state? A. I have been damaged plenty.

"Q. $10,000.00? A. That much anyhow."

Jessie W. Stevens testified as follows:

"Q. At the time Mr. Mitchell was negotiating, was there anything said by you or Mr. Stevens to Mr. Mitchell in your presence about where the cattle were to be taken? A. Yes; I told him two or three times 'I have had this brand all my life and I would not have the stuff scattered in the state for $10,000.00.'"

Carl Sams testified as follows:

"Q. If cattle were worth $85.00 a head for a cow and calf to be shipped out of the State, what would they be worth in the state? A. Well, it would make right smart difference with me. I could not say the value because I don't sell my cattle to stay in the State. There is a different practice; some people do sell in the State.

"Q. What is the difference in price where they go out and stay in the State?'

"Q. Do you know what difference it makes among the livestock dealers in this state, Mr. Sams? A. I could not say exactly; I would think $5.00 or $10.00 but I don't sell that way.

"Q. You sell all yours to go out of the state? A. Yes, sir.

"Q. If they were to stay in the state, what difference would it make in your price? A. That would depend on who they went to and where they wound up, or how close they were to be.

"Q. That all has a bearing? A. Yes, sir.

"Q. If within a course of a few months these cattle were sold and moved out of the state, you would not know what the damage would be. A. The value?

"Q. If they actually got out of the state and were moved out. A. Well, if I knew all those cattle were gone, it would not make so much difference.

"Q. I say, it would be nothing, wouldn't it? A. I don't know.

"Q. If they are gone? A. There might be a little sleep lost there between times because they are supposed to go out when I sell them."

Albert Buchanan testified as follows:

"Q. Mr. Buchanan, are you familiar with the practice in New Mexico of live-stock dealers who are dealers in cattle of any ranch of any size requiring cattle to be shipped out of the state when they are sold? A. I know lots of people wants it done.

"Q. Why is that? A. If they are sold in the state, the brands get scattered.

"Q. What difference does it make? A. You are not sure whether it is your stock or somebody elses; it causes a lot of trouble to find out about it.

"Q. Does it cause expense to the people who originally sold those cattle? A. Yes, sir.

"Q. Are you familiar with the difference in prices ranchers require on the cattle if they are to be sold out of the state and in the state? A. Different prices, I don't know about higher prices or lower prices; sometimes it is in the contract to be taken out of the state.

"Q. Does it make a difference in those prices? A. I would not know for sure about the difference in prices."

█ This testimony conclusively proves the contract in question and its breach as alleged by appellees. But it is self-evident that it fails to prove those elements essential to the right of recovery, viz., actual loss and resultant damages, both of which must be established by a preponderance of the evidence.

In 15 Am.Jur. "Damages", Section 356, the author states the rule as follows: "As a rule, however, actual or compensatory damages are not to be presumed, but must be proved. To warrant their recovery, the actual detriment occasioned must be shown by competent evidence and with reasonable certainty, for the recovery is limited to such damages as are established by the evidence. * * * *The evidence must afford data, facts, and circumstances reasonably certain from which the jury may find the actual loss; and the plaintiff must show by a preponderance of evidence the damages caused by the injury complained of.* * * * There must be proof that the dam-

age sought to be recovered *had occurred,* that it was caused by the wrong of the defendant, and was of the extent and amount thereof." (Emphasis ours.)

█ Under what circumstances the verdict of a jury will be disturbed by the courts has been variously stated. But it has long been the rule of this court that its verdict will not be disturbed when supported by substantial evidence.

█ The witness Buchanan testified that it would cause trouble and expense to the owner of the brand by having the cattle commingled or placed in close proximity. The witness Sams testified in his opinion that a seller possibly would be damaged as much as $10 per head. Not only is this evidence uncertain and speculative, but is rendered immaterial, as it fails to show any actual loss sustained by appellees. If the evidence had shown assessable loss resulting from the breach, a different case would be presented. As we appraise the testimony, appellees were merely estimating or rather characterizing possible results. The verdict is not supported by substantial evidence.

. The question now presented is whether appellees, having established their cause of action, but having failed to establish that they are entitled to compensatory damages, may recover nominal damages.

█ Appellees have owned the brand in question for many years. Appellant agreed to protect appellees by shipping the cattle out of the state, which he admittedly failed to do. Appellees are confronted with annoyances and possible loss. Consequently, the breach of contract is such injury to the rights of appellees entitling them to nominal damages. Chaffin v. Fries, etc., Co., 135 N.C. 95, 47 S.E. 226.

It is stated in Restatement of Law of Torts, Sec. 907: " 'Nominal damages' are *a trivial sum of money awarded to a litigant who has established a cause of action but has not established that he is entitled to compensatory damages.*"

Such nominal damages ordinarily carry the costs because of the breach of contract. Batson v. Higginbothem, 7 Ga.App. 835, 68 S.E. 455; Lund v. Lachman, 29 Cal.App. 31, 154 P. 295; Crystal Dome Oil & Gas Co. v. Savic, 51 Idaho 409, 6 P.2d 155; Press v. Davis, Tex.Civ.App., 118 S.W.2d 982; City of Rainier v. Masters, 79 Or. 534, 154 P. 426, 155 P. 1197, L.R.A.1916E 1175; Stanton v. New York & E. Ry. Co., 59 Conn. 272, 22 A. 300, 21 Am.St.Rep. 110.

It was error to submit to the jury the issue of actual damages. The jury should have been instructed to return a verdict of nominal damages in the amount of one cent or one dollar, and the motion sustained on the question of actual damages. The judgment should be, and is, reversed with directions to the lower court to reinstate the

case upon its docket and enter judgment for plaintiff for a nominal amount, together with costs, and it is so ordered.

BRICE, C. J., LUJAN, and SADLER, JJ., and CARMODY, District Judge, concur.

Opinion Modifying Direction as to Costs.

PER CURIAM.

Now, on the eve of issuing mandate herein, it having been called to the attention of the court that there is omitted from the opinion heretofore filed, any direction as to costs taxable here and incurred in connection with this appeal; and it appearing that the defendant below as appellant here has secured a reversal of the judgment rendered against him on the second cause of action and is, therefore, entitled to judgment for his costs on appeal; the clerk, accordingly, will tax in his favor the costs on appeal, prior to issuance of mandate herein. The plaintiffs will recover their costs below upon entry of nominal judgment in their favor as directed in the former opinion.

It is so ordered.

BRICE, C. J., and LUJAN, SADLER and COMPTON, JJ., and CARMODY, District Judge, concur.

McGHEE, J., did not participate.