523 P.2d 1357

**E & B SPECIALTIES CO., INC.,**
**Plaintiff-Appellant,**

v.

**Charles L. PHILLIPS, d/b/a Heights Plumbing Company, Defendant-Appellee.**

**No. 9851.**

Supreme Court of New Mexico.
July 3, 1974.

Keleher & McLeod, William K. Stratvert, Albuquerque, for plaintiff-appellant.

Gallagher & Walker, Albuquerque, for defendant-appellee.

## OPINION

STEPHENSON, Justice.

Suit was brought in the District Court of Bernalillo County by plaintiff-appellant ("E & B") to recover the amount due under a contract between the parties. Defendant-appellee ("Phillips") counterclaimed. The case was tried to the court without a jury and judgment was entered in favor of Phillips on the counterclaim after allowing a setoff to E & B. E & B appeals.

E & B's complaint alleged that it had subcontracted with Phillips to perform certain masonry work which was required to repair the central heating plant at Kirtland Air Force Base, such repair being the subject of a contract between Phillips and the United States Government. E & B alleged that it had substantially performed its obligations under the subcontract, but that Phillips had refused to pay it for its services, and prayed for judgment. Phillips answered, denying the material allegations of the complaint, and counterclaimed for damages. The counterclaim alleged that E & B had failed to perform its obligations under the subcontract and that, as a result, the Government had made an assessment for liquidated damages against Phillips in the sum of $2,450.00, provision being made for such assessment in the prime contract.

The trial court in its findings of fact found the execution of the prime contract and the subcontract. It then found:

"6. That plaintiff negligently failed to perform its obligations under the subcontract, and, as a result, the United States Government invoked the penalty provisions provided for in said contract.

"7. That, as a result of plaintiff's negligent performance and failing to complete performance within the time limits of the contract, defendant was assessed $2,450.00 for liquidated damages under the penalty provisions of his contract.

"8. That defendant is entitled to the sum of $2,450.00 from plaintiff for failure to perform its obligation under the sub-contract."

and concluded that Phillips was entitled to judgment against E & B in the sum of $2,450.00 on his counterclaim. It is undisputed that E & B was entitled to $1600.00 on its complaint.

■ E & B argues that there was no substantial evidence that it was at fault in its performance of the subcontract. We have no hesitation in holding that there is substantial evidence to support the court's finding of "negligence" on the part of E & B which we take to be a determination that it failed and neglected to perform the subcontract within a reasonable time.

The real issue in the case centers on damages. E & B argues that there was no substantial evidence of any damages, but the chief thrust of its argument is that the court erred in accepting the liquidated damages apparently assessed under the prime contract as the measure of damages to be applied to the subcontract.

We first review the evidence on this subject. It is rather sparse. The subcontract is before us. It provides neither a completion date nor for liquidated damages. The prime contract was neither offered nor introduced into evidence. It was not mentioned in the subcontract. We are uninformed as to its content even as to its amount. The prime contract was not furnished to E & B, and there is no evidence it had knowledge of the completion date or of any liquidated damage or penalty provisions which the prime contract may have contained.

The totality of the evidence regarding damages and their amount can be summarized by testimony emanating from Mr. Sinkew, the Government's representative in respect to this project. He said that the brickwork which E & B was to perform was rejected on September 9, 1970. After recounting change orders which had extended the contract completion date to September 8, 1970, and ultimate acceptance by the Government on December 18 of that year, he testified as follows:

"Q. December 18th, excuse me, and at that time did they terminate the penalty provisions?

A. That's correct.

Q. And how much did the government assess against Mr. Phillips for penalty?

A. $2450.00.

Q. Mr. Sinkew, I want to ask you, do you think you have the technical ability as well as the capacity to state to the court why this job was delayed as long as it was?

A. In my opinion it was delayed due to the brick work, the fire brick work or refractory work."

■ New Mexico follows the general rule of forseeability in measuring damages for breach of contract. See Mitchell v. Intermountain Casualty Company, 69 N.M. 150, 364 P.2d 856 (1961); Lommori v. Milner Hotels, 63 N.M. 342, 319 P.2d 949 (1957); Price v. Van Lint, 46 N.M. 58, 120 P.2d 611 (1941); and Barnard-Curtiss Company v. United States, 257 F.2d 565 (10th Cir. 1958). The leading case most often quoted for the rule is Hadley v. Baxendale, 9 Exch. 341, 156 Eng.Reprint 145, 5 Eng.Rul.Cas. 502 (1854). In that case it was said:

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of

such contract which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under those special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract."

█ We consider the liquidated damages provisions which were apparently included in the prime contract to be "special circumstances" within the meaning of Hadley v. Baxendale. Thus damages which resulted from those special circumstances were recoverable only if they were communicated to or known by both parties at the time they entered into the subcontract. 22 Am. Jur.2d, Damages, § 56. The basis for this rule is simply that:

" 'Parties, when they enter into contracts, may well be presumed to contemplate the ordinary and natural incidents and consequences of performance or non-performance; but they are not supposed to know the condition of each other's affairs, nor to take into consideration any existing or contemplated transactions, not communicated nor known, with other persons. Few persons would enter into contracts of any considerable extent as to subject matter or time if they should thereby incidentally assume the responsibility of carrying out, or be held legally affected by, other arrangements over which they have no control and the existence of which are [sic] unknown to them.' Sutherland on Damages, 4th ed. vol. 1, page 182, § 47." Macchia v. Megow, 355 Pa. 565, 50 A.2d 314 (1947).

█ Here, there is no evidence upon which the trial court could have correctly decided that the damages suffered by Phillips were foreseeable by E & B. We hold, therefore, that the trial court erred in awarding the liquidated damages assessed Phillips by the Government as the measure of damages for Phillips' counterclaim against E & B. There is no reasonable relationship between the work E & B contracted to do and the amount of damages Phillips was assessed under its separate contract with the Government and this amount should not govern as between Phillips and E & B unless it was adopted by them as the measure of damages for any breach of their agreement. See United States v. Foster Construction (Panama) S.A., 456 F.2d 250 (5th Cir. 1972).

The judgment entered upon the counterclaim is reversed. The trial court is directed to set aside its judgment and enter judgment for E & B in the sum of $1600.-00.

It is so ordered.

OMAN and MONTOYA, JJ., concur.