891 P.2d 1190

**CAMINO REAL MOBILE HOME PARK PARTNERSHIP, a Colorado general partnership, Plaintiff–Appellant,**

v.

**Patricia WOLFE, as personal representative of the Estate of Ruel M. McCarson, Defendant–Appellee.**

No. 21282.

Supreme Court of New Mexico.

Feb. 10, 1995.

438

Sager, Curran, Sturges & Tepper, P.C., Sarah Curry Smith, Las Cruces, for appellant.

E.H. Williams, Joseph M. Holmes, Las Cruces, for appellee.

## OPINION

FRANCHINI, Justice.

This case concerns a purchaser's action against a seller for breach of warranty as a result of the sale and purchase of a mobile home park. The seller warranted that a sewage treatment plant, which was part of the property and serviced the park, was in good working condition. The purchaser had problems with the sewage treatment plant and eventually had to replace the plant as part of a settlement with the Environmental Improvement Division (EID). The purchaser sued the seller to recover damages for replacing the sewage treatment plant and adding an additional leach field, as well as for fines paid to the EID, lost profits, and diminution in value of the property.

The trial court ruled that the purchaser had failed to prove that the corrective action taken was reasonably necessary to cure or correct the breach of warranty; that it failed to prove that the expenses incurred in the corrective action were fair and reasonable in amount; and that actions taken by the purchaser shortly after buying the property distorted and rendered speculative the damages claimed for lost profits and diminution in value of the property. We reverse in part and affirm in part. We hold that the court misapprehended the proof required to show damages in a cause of action for breach of warranty.

## I. BACKGROUND

*A. Facts.* In 1984 Plaintiff–Appellant Camino Real Mobile Home Park Partnership (Camino Real) purchased a 20.46 acre mobile home park located south of Las Cruces, New Mexico, from Defendant–Appellee Estate of Ruel McCarson (the Estate). Shortly after purchase of the mobile home park Camino Real sent notices to all tenants raising their rent from $75.00 per month to $135.00 per month, requiring an additional security deposit of $110.00 per month, and imposing a "pet fee," calculated on a per pet basis, which sums were immediately due and payable by the tenants. Within six weeks of the notice approximately 80 of the 167 tenants terminated their tenancy and vacated the park. Camino Real recognized that it had made a poor business decision and eventually lowered the rent, and by 1986 the park began once again to show a profit.

The purchase of the mobile home park also presented other problems for Camino Real. The park included a sewage treatment plant for treatment and disposal of the park's

wastewater. The contract of sale between Camino Real and the Estate provided that the Estate, as seller, warranted that the sewage system was in good working order and was in compliance with all inspections and local ordinances.

Three weeks after Camino Real purchased the mobile home park a pool of sewage effluent surfaced in the area' of the park's liquid waste drainage field (leach field). The EID notified the manager of the park that the surfacing effluent appeared to be causing a public nuisance and a health hazard to the residents of the park and insisted that steps be taken to remedy the problem. Ronald McCarson, the executor of the Estate, was informed of the problem and apparently solicited bids on a new effluent disposal system. Plans and specifications for an additional leach field were submitted to the EID and approved in November 1984. In January 1985 the EID contacted Camino Real, threatening legal action if the proposed work was not completed by February 17, 1985.

On February 18, 1985, a health program manager from the EID met with McCarson and the manager of the mobile home park to inspect the sewage treatment plant. An unused leach field was discovered during the inspection and connected to the existing system. It appeared to the health program manager that the ponding of the effluent would be remedied by use of the second leach field. Two months later, however, the EID received a complaint of offensive odors and raw sewage on the grounds of the park. A follow-up investigation by the EID confirmed that offensive odors were emanating from the sewage treatment plant but did not locate any raw sewage on the premises.

In July 1985 Camino Real contracted to have New Mexico State University students, under the supervision of experts from the New Mexico State University Wastewater Treatment Department, operate and maintain the sewage treatment plant. The contract was terminated in July 1986 due to the University's inability to control odors from the sewage treatment plant or the repeated flooding of the leach field by effluent.

In an effort to remedy the inadequacy of the waste-water disposal system, Camino Real replaced the leach field in January 1987, but problems with ponding effluent and strong odors reappeared soon thereafter. In a letter dated July 2, 1987, the EID agreed to temporarily refrain from filing legal action against Camino Real on the condition that Camino Real submit an acceptable discharge plan, designed in accordance with the Water Quality Control Commission Regulations. In October 1987 the EID approved a discharge plan that contemplated construction of a new sewage treatment plant on the condition that the plant be operational by December 14, 1987. Camino Real had not even begun construction of the plant by this deadline and the EID initiated legal action. Camino Real and the EID subsequently entered into a settlement agreement, in which Camino Real agreed to complete the plant by January 1990 and pay a fine of $11,000 for past violations of the Water Quality Act, NMSA 1978, Section 74–6–10(B) (Repl.Pamp.1989), and Water Quality Control Commission Regulations. The new sewage treatment plant was installed in late 1989 at a cost of over $100,-000.

B. *Proceedings.* In April 1990 Camino Real filed a complaint against the Estate alleging breach of contract and fraud. A bench trial was held in December 1992. Camino Real claimed damages for the actual amounts spent in repairs and replacement of the sewage treatment plant and leach field, as well as damages for fines paid to the EID, loss of rents, and diminution of value of the mobile home park.

At the close of Camino Real's case-in-chief, the Estate moved for dismissal of the claim on the basis that Camino Real had not proven its damages. The trial court found that Camino Real had failed to prove that "corrective action taken by Plaintiff to cure the alleged breach of contract warranty by Defendant was reasonably necessary to cure or correct the alleged warranty breach." The court also found that Camino Real "failed to prove the costs and expenses incurred in the corrective action were fair, reasonable or necessary to correct the alleged breach of warranty." Finally, the court found that the raising of space rental rates immediately following the purchase of the mobile home park

resulted in adverse financial consequences that irredeemably distorted the lost profits and diminution in value claims, causing those claims "to become purely speculative." The court concluded that Camino Real had "failed to prove any damages with reasonable certainty or by substantial evidence of fairness, reasonableness or necessity" and dismissed the cause of action.

Camino Real appeals the order of dismissal, arguing that (1) the trial court erred in dismissing the case on the ground that the damages incurred for repairing and replacing the sewage treatment plant and paying the EID fine had not been shown to be necessary and reasonable in cost; (2) the court erred in ruling that the claims for lost profits and diminution of value of the property were so speculative as to preclude recovery; and (3) the court erred in refusing to admit into evidence, as hearsay, an appraisal of the property and an engineer's report suggesting methods for remedying the recurring EID violations. We affirm in part and reverse in part.

## II. DISCUSSION

A. *Standard of Review.* We assume, because the trial court failed to specify the authority for its ruling, that the court dismissed the cause of action under SCRA 1986, 1–041(B) (Rule 41(B)), which provides in pertinent part:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

In ruling on a motion to dismiss under Rule 41(B), the court, as factfinder, weighs the evidence and passes judgment on whether the plaintiff has proved the necessary facts to warrant the relief asked. *Panhandle Pipe & Steel, Inc. v. Jesko,* 80 N.M. 457, 460, 457 P.2d 705, 708 (1969). A Rule 41(B) dismissal thus is a judgment on the merits. *Garcia v. American Furniture Co.,* 101 N.M. 785, 787, 689 P.2d 934, 936 (Ct. App.), *certs. denied,* 101 N.M. 686, 687 P.2d 743 *and* 102 N.M. 7, 690 P.2d 450 (1984). The motion to dismiss may be sustained even though plaintiff's evidence establishes a prima facie case that would have precluded a directed verdict under SCRA 1986, 1–050(A), for defendant in a jury trial. *See Panhandle Pipe,* 80 N.M. at 460, 457 P.2d at 708.

We review the involuntary dismissal of a plaintiff's case under Rule 41(B) for failure to carry a burden of proof as we review any other judgment on the merits. The judgment of the trial court will not be disturbed on appeal if the findings of fact entered by the court are supported by substantial evidence, are not clearly erroneous, and are sufficient to support the judgment. *See Mascarenas v. Jaramillo,* 111 N.M. 410, 412, 806 P.2d 59, 61 (1991) (stating that appellate court's duty is to interpret trial court's findings to determine whether they are sufficient to support judgment); *Roybal v. Morris,* 100 N.M. 305, 311, 669 P.2d 1100, 1106 (Ct.App.1983) (stating that appellate court is "bound by the trial court's findings of fact unless they are demonstrated to be clearly erroneous or not supported by substantial evidence"); *see also Moore v. City of San Jose,* 615 F.2d 1265, 1273 (9th Cir.1980) (discussing standard of review for trial court's findings of fact under Fed.R.Civ.P. 41(b) (amended 1991)). Appellate courts may also reverse a trial court's judgment when the judgment is based on an erroneous conclusion of law. *Ledbetter v. Webb,* 103 N.M. 597, 602–03, 711 P.2d 874, 879–80 (1985).

B. *Actions for breach of warranty.* We first discuss the nature of Camino Real's cause of action for breach of warranty. Camino Real contends that the Estate warranted that the sewage treatment plant was in good working order at the time of sale of the mobile home park. The claim concerns an alleged warranty of quality as it applies to real property. The law of warranty for sales of goods is codified at NMSA 1978, Sections 55–2–312 to –318 (Repl.Pamp.1993) (Uniform

Commercial Code); however, the special warranty provisions contained in the Uniform Commercial Code are not applicable where realty is involved, and in such cases—as in this case—we apply common law principles of warranty. *See Dittman v. Nagel,* 43 Wis.2d 155, 168 N.W.2d 190, 193 (1969).

"A 'warranty' is an assurance by one party to a contract of the existence of a fact upon which the other party may rely." *Steadman .v. Turner,* 84 N.M. 738, 742, 507 P.2d 799, 803 (Ct.App.1973) (quoting 17A C.J.S. *Contracts* § 342 (1963)). What is being promised "is indemnification against loss, in case the facts turn out not to be as represented." 1 Arthur L. Corbin, *Corbin on Contracts* § 14 (1963); *see also Gulf Oil Corp. v. Federal Power Comm'n,* 563 F.2d 588, 599 (3d Cir. 1977) ("[A] warranty amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue.").

■ A warranty may be either express or implied by law. *See* 17A C.J.S. *Contracts* § 342, at 325–38. Once a court determines a warranty exists, the seller's liability remains the same whether the breach pertains to an express or implied warranty. Robert J. Nordstrom, *Handbook on the Law of Sales* § 74 (1970). The United States Supreme Court has defined "express warranty" as follows:

[A]ny affirmation of the quality or condition of the thing sold, (not uttered as matter of opinion or belief,) made by the seller at the time of sale, for the purpose of assuring the buyer of the truth of the fact affirmed, and inducing him to make the purchase; if so received and relied on by the purchaser, is an express warranty.

*Shippen v. Bowen,* 122 U.S. 575, 581, 7 S.Ct. 1283, 1285, 30 L.Ed. 1172 (1887) (quoting *Osgood v. Lewis,* 2 H. & G. 495, 518 (Md. 1829)). An action for breach of an express warranty of the quality or condition of real property sounds in contract, insofar it arises out of the agreement of the parties and the plaintiff sues to recover what he contracted to receive. *See, e.g., National Ben Franklin Ins. Co. v. Bakhaus Contractors, Inc.,* 124 Mich.App. 510, 335 N.W.2d 70, 72 (1983) (stating that breach of warranty claims sound in contract); *Huebner v. Caldwell & Cook,*

*Inc.,* 139 Misc.2d 288, 526 N.Y.S.2d 356, 358 (Sup.Ct.1988) (same); *Barclay v. Johnson,* 686 S.W.2d 334, 337 (Tex.Ct.App.1985) (same). *But see Fruehauf Trailer Div. v. Thornton,* 174 Ind.App. 1, 366 N.E.2d 21, 27 (1977) (allegations of complaint determine whether warranty action is brought in contract or tort); *Ware v. Christenberry,* 7 Kan. App.2d 1, 637 P.2d 452, 456–57 (1981) (facts proven during trial determine whether warranty action is brought in contract or tort). *See generally* 2 Alphonse M. Squillante & John R. Fonesca, *Williston on Sales* § 15–4 (4th ed. 1974) (discussing historical development of action for breach of warranty).

■ The plaintiff's burden of proof in an action for breach of warranty thus is identical to the burden of proof in any action for breach of contract. The party relying on the breach of warranty must prove the existence of a warranty, the breach thereof, causation, and damages. *Compare Anderson v. Thomas,* 184 Kan. 240, 336 P.2d 821, 831 (1959) ("The burden of proof is on the party relying upon a breach of warranty to show the warranty, the breach thereof, and that his loss resulted from the breach of such warranty.") *with Pillsbury v. Blumenthal,* 58 N.M. 422, 427, 272 P.2d 326, 329 (1954) (complaint alleging contract, defendant's failure to complete work owed under contract, and damages resulting therefrom, stated facts sufficient for *prima facie* cause of action for breach of contract).

■ *C. Damages for breach of warranty.* Once the plaintiff shows that the defendant has breached a warranty, the inquiry turns to the damages that the plaintiff has suffered as the result of the breach. The purpose of an award of damages is to make the injured person whole. *Hood v. Fulkerson,* 102 N.M. 677, 680, 699 P.2d 608, 611 (1985); *see also* 5 Corbin, *supra,* at § 992 (aim of award of damages for breach of contract "is to put the injured party in as good a position as he would have had if performance had been rendered as promised"). The underlying principal is compensation. *Board of Educ. v. Jennings,* 102 N.M. 762, 765, 701 P.2d 361, 364 (1985); *see also Miller v. Robertson,* 266 U.S. 243, 252, 45 S.Ct. 73, 76–77, 69 L.Ed. 265 (1924) (not-

ing that compensation is fundamental principal of damages). Thus damage awards should provide full and just compensation for the injured party. *See Shaeffer v. Kelton,* 95 N.M. 182, 187, 619 P.2d 1226, 1231 (1980); *Terrel v. Duke City Lumber Co.,* 86 N.M. 405, 424, 524 P.2d 1021, 1040 (Ct.App.1974), *aff'd in part, rev'd in part on other grounds,* 88 N.M. 299, 540 P.2d 229 (1975).

▮▮▮ In an action for breach of contract the party who fails to perform the agreement is justly responsible for all damages flowing naturally from the breach. *Shaeffer,* 95 N.M. at 187, 619 P.2d at 1231. The damages that arise naturally and necessarily as the result of the breach are considered general damages, which are based on the concept that "the plaintiff should be awarded the value of the very thing promised so that his balance sheet will reflect capital assets he would have had upon the defendant's full performance." 3 Dan B. Dobbs, *Dobbs Law of Remedies* § 12.2(3), at 40–41 (2d ed. 1993). A plaintiff may recover not only for harm to his or her entitlement, that is, his general damages, but also for consequential damages suffered as a result of the defendant's wrong. *See, e.g.,* 1 *id.* § 3.3(4), at 304; Charles T. McCormick, *Handbook on the Law of Damages* § 176, at 673 (1935); *Newcum v. Lawson,* 100 N.M. 512, 513, 672 P.2d 1143, 1144 (Ct.App.1983). "[C]onsequential or 'special' damages are not based on the capital or present value of the promised performance but upon benefits it can produce or losses that may be caused by its absence." 3 Dobbs, *supra,* § 12.2(3), at 41.

▮▮▮ Thus, in a case for breach of warranty of the condition of real property, the defendant may be liable in general damages for the harm to the plaintiff's entitlement and in consequential damages for other losses suffered by the plaintiff as a consequence of the breach. Camino Real's claim for recovery of damages for replacing the sewage treatment plant and leach field are for general damages, because they are for recovery of the value of the promised performance itself; the claims for damages for recovery of the monies paid in fines to the EID, loss of profits, and diminution in value of the property are for consequential dam-

ages, because they are for recovery of value lost in consequence of the breach.

### 1. General damages.

▮▮▮ When compensation is sought for breach of warranty as to the condition or quality of construction of real property, the measure of damages is essentially the same as when compensation is sought in tort for physical harm to real property or the structures on it, or when compensation is sought for breach of a construction contract. 1 Dobbs, *supra,* § 5.2(1), at 713; 3 *id.* § 12.19(1), at 433; *see also Witty v. C. Casey Homes, Inc.,* 102 Ill.App.3d 619, 58 Ill.Dec. 249, 254, 430 N.E.2d 191, 196 (1981) (stating that measure of damages is same whether plaintiffs sue for breach of building contract or breach of warranty); *Redbud Coop. Corp. v. Clayton,* 700 S.W.2d 551, 561 n. 21 (Tenn. Ct.App.1985) (damage to real property caused by faulty construction of water drainage system; plaintiff is entitled to same measure of damages whether the action was decided upon negligence, breach of construction contract, or breach of warranty theory). The objective is to place the plaintiffs in the same financial position, with regard to the property, as they would have been had the property not been damaged, or had been adequately constructed, or had been as warranted.

▮▮▮ We follow the measure of damages as stated by Justice Cardozo in *Jacob & Youngs, Inc. v. Kent,* 230 N.Y. 239, 129 N.E. 889, 891 (1921):

> It is true that in most cases [of defective construction] the cost of replacement is the measure. The owner is entitled to the money which will permit him to complete, unless the cost of completion is grossly and unfairly out of proportion to the good to be attained. When that is true, the measure is the difference in value.

(discussing damages for breach of construction contract), *quoted with approval in Montgomery v. Karavas,* 45 N.M. 287, 296, 114 P.2d 776, 782 (1941); *see also Harvey v. Bokum,* 70 N.M. 444, 447, 374 P.2d 500, 502 (1962) (stating that rule for measure of damages for destruction of property capable of being replaced is cost of restoring or replac-

ing such property); *Mogollon Gold & Copper Co. v. Stout,* 14 N.M. 245, 261–62, 91 P. 724, 729 (1907) (stating that damages for destruction of property may be proved by cost of repair or replacement, or by showing depreciation in value of real estate). Thus the measure of damages where the plaintiff seeks to enforce a warranty as to the condition or quality of construction of real property is the cost of repairs required to bring the property into compliance with the warranty or, if the cost of repairs or replacement involves economic waste, the measure is the difference between the reasonable market value of the subject property as warranted and its reasonable market value in its actual condition. *E.g., Sanford v. Kobey Bros. Constr. Corp.,* 689 P.2d 724, 726 (Colo.Ct. App.1984); *Northern Petrochemical Co. v. Thorsen & Thorshov, Inc.,* 297 Minn. 118, 211 N.W.2d 159, 165 (1973); *Beik v. American Plaza Co.,* 280 Or. 547, 572 P.2d 305, 310 (1977); *see also* 13 Am.Jur.2d *Building and Construction Contracts* § 79, at 79 (1964) (discussing damages for breach of construction contract); 5 Corbin, *supra,* § 1089, at 485 (same); Restatement (First) of Contracts § 346(1) (1932) (same). Consequential (or special) damages,[1] such as lost profits incurred during the repair period, may also be recovered if they do not duplicate the recovery under the standard stated above. 1 Dobbs, *supra,* § 3.3(7), at 314; *see also Allen v. Allen Title Co.,* 77 N.M. 796, 798, 427 P.2d 673, 675 (1967) (stating that award of damages should restore to plaintiff what has been lost by breach and "what he reasonably could have been expected to gain if there had been no breach").

Therefore, in order to meet its burden of proof on its claim of breach of warranty, Camino Real had to show the existence of a warranty, the breach thereof, causation, and the cost of repairs required to bring the property into compliance with the warranty. The trial court ruled from the bench that Camino Real had established that the sewage treatment plant had been warranted to be in good working order and that this warranty had been breached. The court, however, found that Camino Real's proof was insufficient to establish damages, in that Camino Real failed to demonstrate that it was reasonably necessary to replace the sewage treatment plant and that the charges for that facility were reasonable in amount. We disagree, and hold that the evidence presented by Camino Real did establish damages as a matter of law absent refutation by the Estate, such as to render the court's dismissal of the action clearly erroneous.

■ It is true that, under certain circumstances, parties seeking damages may submit as evidence receipts for expenses incurred only if they can demonstrate that those expenses were necessarily incurred as a result of another's wrongful act and that the expenses were reasonable in amount. For example, employers have an obligation under the Workers' Compensation Act to provide reasonable and necessary health care services to employees. NMSA 1978, § 52–1–49 (Repl.Pamp.1991). In deciding whether to admit evidence of medical treatments for which payment is sought under the Workers' Compensation Act, the trial court must determine if the party introducing the evidence has proved that the costs incurred were reasonably necessary as a result of the injury and reasonable in amount. The language of the statute requires the court to make a finding of reasonableness and necessity before bills may be submitted as evidence of damages. We do not hold that as a general rule, however, the court must make specific findings on the necessity and reasonableness of repairs before the plaintiff is entitled to compensation for the cost of those repairs.

■ The question for the court was not whether the expenditures for replacing the sewage treatment plant were necessary and reasonable, but rather, were there damages caused by the breach and, if so, what was the amount of damages? The requirement of "necessity" is better stated as a requirement that the plaintiff show that the alleged damages were actually caused by the wrong of the defendant. *See Stevens v. Mitchell,* 51

---

**1.** Consequential damages are often referred to as special damages, and the terms are used interchangeably in this opinion.

N.M. 411, 414, 186 P.2d 386, 389 (1947) (stating that recovery of damages for breach requires proof of actual loss and resultant damages); *Caldwell v. Kats,* 38 Colo.App. 156, 555 P.2d 190, 193 (1976) (stating that recovery of damages for breach of warranty requires proof that breach was actual cause of damages), *rev'd on other grounds,* 193 Colo. 384, 567 P.2d 371 (1977) (en banc); *Jacobs v. Danny Darby Real Estate, Inc.,* 750 S.W.2d 174, 176 (Tex.1988) (Kilgarlin & Ray, JJ., concurring) (arguing that Texas Deceptive Trade Practices Act does not require proof of reasonableness and necessity of expenditures; DTPA only requires that defendant's conduct constitute a proving cause of actual damages). In this case, the court stated that it was "undisputed that a new plant was required to be put in, ultimately." The breach of warranty thus was the producing cause of the damages resulting from the replacement of the sewage treatment plant and the leach field. *See Board of Educ. v. Plymouth Rubber Co.,* 82 Md.App. 9, 569 A.2d 1288, 1297 (holding that award of damages was supported by undisputed evidence that replacement of roof was necessary to render property as warranted), *cert. denied,* 320 Md. 505, 578 A.2d 778 (1990).

 Furthermore, a requirement, such as that implemented by the trial court, that costs of repair or replacement be reasonable in amount goes to the scope of damages, not to the existence of damages. Once a party has established a cause of action for breach of contract by showing the existence of a contract, breach thereof, causation, and actual damage, he or she may be awarded nominal damages and costs, even when failing to establish the amount of compensatory damages. *Stevens,* 51 N.M. at 415, 186 P.2d at 389. Therefore, based on the court's findings that a warranty had been made as to the condition of the sewage treatment plant and that the warranty had been breached, Camino Real may have been entitled to at least nominal damages and recovery of costs. *See Hooton v. Kenneth B. Mumaw Plumbing & Heating Co.,* 271 Md. 565, 318 A.2d 514, 518 (1974); *see also* NMSA 1978, § 39–3–30 (Repl.Pamp.1991) ("In all civil actions ... the party prevailing shall recover his costs"); SCRA 1986, 1–054(E) ("[C]osts shall be al-lowed as a matter of course to the prevailing party").

 Camino Real, in this case, did more. It put on sufficient evidence to support an award of compensatory damages. The measure of damages in this case is the cost of repairs required to bring the property into compliance with the warranty. Camino Real introduced into evidence a list of expenditures, supported by cancelled checks, and Camino Real's representative testified that those expenses were incurred in replacing the sewage treatment plant and leach field. The amount actually paid by a party for repairs is some evidence of the reasonable cost of repairs and is sufficient to support an award in the absence of contradictory evidence. *Malinson v. Black,* 83 Cal.App.2d 375, 188 P.2d 788, 791 (1948). The United States Court of Appeals, District of Columbia Circuit, has stated the rule as follows:

> [S]ubmission of a paid bill, supported by testimony of the claimant or claimant's agent that the expense was occasioned by defendant's wrong, is sufficient *prima facie* evidence of the amount of damages. Once a *prima facie* case of damages has been established by the claimant, the burden of production shifts to the opponent to go forward with evidence tending to mitigate or abate the damages or to undermine the credibility of the claimant's case.

*Eureka Inv. Corp., N.V. v. Chicago Title Ins. Co.,* 743 F.2d 932, 942 (D.C.Cir.1984) (applying D.C. law) (footnotes omitted). *Cf. Davis v. Los Alamos Nat'l Lab.,* 108 N.M. 587, 589, 775 P.2d 1304, 1306 (Ct.App.), *certs. denied,* 108 N.M. 433, 773 P.2d 1240 *and* 108 N.M. 433, 773 P.2d 1240 (1989) ("A bill for medical services is prima facie proof of reasonableness and necessity."). Once Camino Real introduced its list of expenses incurred in replacement of the sewage treatment plant and leach field, the burden of proof shifted to the Estate to introduce evidence that the expenses incurred were not causally related to the breach of warranty, or that the repairs were excessive in cost. The trial court thus erred in ruling that Camino Real's proof was insufficient to establish damages. The evidence presented by Camino Real was suffi-

cient as a matter of law to establish damages, absent refutation by the Estate.

■ We do note, however, that "a party whose contract has been breached is not entitled to be placed in a better position because of the breach than he would have been in had the contract been performed." *Jennings,* 102 N.M. at 765, 701 P.2d at 364 (quoting *Blair v. United States ex rel. Gregory–Hogan,* 150 F.2d 676, 678 (8th Cir.1945)). If the sewage treatment plant was warranted to be in good working condition, and if that warranty was breached, then Camino Real is entitled to a sewage treatment plant in working condition that would service the mobile home park as it existed at the date of purchase, and not one which may be designed to exceed that standard. *See Hooton,* 318 A.2d at 519; *Meyers v. Antone,* 227 A.2d 56, 59 (D.C.1967) (holding that party who contracted for properly functioning used oil heating system was not entitled to be put in better position than had contract been fully performed).

### 2. Consequential damages.

■ We turn now to the question whether the trial court erred in ruling that Camino Real failed to prove its damages for loss of profits, diminution of value of the property, and fines paid to the EID. As stated above, these claims are for recovery of consequential damages. In *Wall v. Pate,* 104 N.M. 1, 715 P.2d 449 (1986), we discussed recovery of consequential damages as follows:

> [S]pecial damages may be allowed for items of loss more or less peculiar to the plaintiff, which may not be expected to occur regularly to other plaintiffs in similar circumstances, and are a likely loss within the contemplation of the parties at the time of contracting. Stated another way, special provable damages flow from the disappointment of a special purpose for the subject matter of the contract or from unusual circumstances, either or both of which were known to the parties when they contracted. In such a case, the amount permitted under the general dam-

age formula, alone, clearly will either be inadequate or nonexistent.

*Id.* at 2, 715 P.2d at 450 (citation omitted).

This is essentially the rule expressed in the seminal case of *Hadley v. Baxendale,* 9 Ex. 341, 156 Eng.Rep. 145, 151 (1854), that a party breaching a contract is liable only for such consequential damages as were within "the contemplation of both parties" at the time of contracting. *See* 3 Dobbs, *supra,* § 12.4(6), at 91 ("[T]he scope of liability is limited to the risks or types of losses which the parties meant his performance to protect against."). Though sometimes described as a rule requiring "foreseeability" of harm for recovery of consequential damages, *see E & B Specialties Co. v. Phillips,* 86 N.M. 331, 333, 523 P.2d 1357, 1359 (1974), we believe that the foreseeability (or contemplation) of damages rule anticipates an explicit or tacit agreement by the defendant "to respond in damages for the particular damages understood to be likely in the event of a breach," *Wall,* 104 N.M. at 2, 715 P.2d at 450. *See Globe Refining Co. v. Landa Cotton Oil Co.,* 190 U.S. 540, 543–44, 23 S.Ct. 754, 755, 47 L.Ed. 1171 (1903) (Holmes, J.); *see also* 3 Dobbs, *supra,* § 12.4(6), at 92 (consequential damages may be recovered for specified risks or for risks reflected by parties' own negotiations and purposes). *See generally* Richard A. Epstein, *Beyond Foreseeability: Consequential Damages in the Law of Contract,* 18 J.Legal Stud. 105 (1989) (advocating use of theory of tacit assumption of risk for determining consequential damages); McCormick, *supra,* § 141 (discussing requirement of tacit agreement to assume the particular risk).

■ In cases where profit is an inducement to making a contract, loss of profits as a result of the breach is generally considered to be within the contemplation of the parties and recovery for lost profits will be allowed as damages if causation is proved with reasonable certainty. *See Ranchers Exploration & Dev. Corp. v. Miles,* 102 N.M. 387, 389, 696 P.2d 475, 477 (1985). The "reasonable certainty" standard imposes on the plaintiff "the burden of proving the fact of damage by a preponderance of the evidence." *Tull v. Gundersons, Inc.,* 709 P.2d 940, 943 (Colo.1985); *see also Wirth v. Com-*

*mercial Resources, Inc.,* 96 N.M. 340, 344, 630 P.2d 292, 296 (Ct.App.) ("The lack of certainty that will prevent a recovery is uncertainty as to the fact of damages, not as to the amount."), *cert. denied,* 96 N.M. 543, 632 P.2d 1181 (1981). Even though the amount of damages need not be proven with mathematical certainty, neither can it be based on surmise, conjecture, or speculation. *Mascarenas,* 111 N.M. at 415, 806 P.2d at 64.

The trial court found that certain acts of Camino Real taken within days after purchase of the mobile home park, including almost doubling the rents and requiring a large damage deposit from the tenants, resulted in adverse consequences that irredeemably distorted Camino Real's claims for loss of profits and diminution of value of the property and caused them to become purely speculative. Camino Real seems to concede that it could not prove its consequential damages with reasonable certainty for the period of time directly following purchase of the mobile home park. It argues, however, that damages were sought only for the period following replacement of the sewage treatment plant in 1989, long after the effects of the 1984 rent increase had been ameliorated, and that its claimed damages for lost profits and diminution of value of the property were suffered as a consequence of the breach because it was forced to divert funds to replace the sewage treatment plant and could no longer afford to maintain the mobile home park properly.

The question whether Camino Real proved that these alleged losses were caused by the breach of warranty is one of fact, and we hold that the trial court's ruling that Camino Real failed to meet its burden was supported by substantial evidence and was not clearly erroneous. Moreover, there is no evidence in the record that Camino Real's precarious financial situation was made known to the Estate or that the Estate agreed, explicitly or tacitly, to protect Camino Real in the event of breach of warranty from losses resulting from Camino Real's financial inability to maintain the premises of the mobile home park. As we stated in *E & B Specialties Co. v. Phillips:*

"Parties, when they enter into contracts, may well be presumed to contemplate the ordinary and natural incidents and consequences of performance or non-performance; *but they are not supposed to know the condition of each others affairs,* nor to take into consideration any existing or contemplated transactions, not communicated nor known, with other persons. Few persons would enter into contracts of any considerable extent as to subject matter or time if they should thereby incidentally assume the responsibility of carrying out, or be held legally affected by, other arrangements over which they have not control over and the existence of which are [sic] unknown to them." *Sutherland on Damages,* 4th ed. vol. 1, page 182, § 47.

86 N.M. at 334, 523 P.2d at 1360 (quoting *Macchia v. Megow,* 355 Pa. 565, 50 A.2d 314, 316 (1947)) (emphasis added) (alteration in original). The fact that Camino Real was in precarious financial shape was a special circumstance presenting the risk that it could not afford to maintain the mobile home park in a condition to attract tenants or retain resale value if forced to repair the sewage treatment plant. The Estate is not imputed with knowledge of Camino Real's affairs so as to place this risk within the contemplation of the parties; therefore "damages which resulted from those special circumstances were recoverable only if they were communicated to or known by both parties at the time they entered into the [contract]." *Id.* No such showing was made, therefore Camino Real failed to meet its burden of proof for its claims for consequential damages for lost profits and diminution in value of the property.

The risk that Camino Real would be subject to penalties or fines such as those assessed by the EID, however, was clearly within the contemplation of the parties. The Estate warranted that the sewer system was in full compliance with all inspections and local ordinances, which indicates that the parties considered the circumstance that failure of the sewage treatment plant to pass inspections or comply with legal requirements could result in harm to Camino Real. The court therefore should consider an award of damages for fines paid by Camino

Real to the EID as a consequence of the inadequate working condition of the sewage treatment plant, subject to mitigation or rebuttal by the Estate.

*D. Exclusion of exhibits on hearsay grounds.* Finally, Camino Real appeals two rulings of the trial court that excluded documents from admission into evidence as hearsay. The first document is a report prepared by Southwest Engineering, Inc., which set out five options available to Camino Real to correct the problems with the sewage treatment plant. The second document is an appraisal of the mobile home park prepared in 1988. Camino Real argues that the exhibits were not offered to prove the truth of the matter asserted, *see* SCRA 1986, 11–801(C), but we disagree. The engineer's report was relevant only to prove causation, that is, that the plant was defective and required repair or replacement; and the appraisal was relevant only to prove damages, that is, that the value of the mobile home park had diminished. The exhibits were offered as evidence of the truth of the assertions that the plant required repair or replacement and that the park had a certain value at a particular time, and therefore were hearsay.

Hearsay statements are generally considered to be unreliable because they are not given under oath and cannot be tested by cross-examination to determine the truthfulness of the declarant. *Chiordi v. Jernigan*, 46 N.M. 396, 402, 129 P.2d 640, 644 (1942); *State v. Taylor*, 103 N.M. 189, 197, 704 P.2d 443, 451 (Ct.App.1985). In his treatise on evidence, Professor Wigmore describes the hearsay rule as follows:

> The theory of the hearsay rule is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination.

6 John H. Wigmore, *Evidence* § 1766, at 250 (James H. Chadbourn rev. 1976). The trial court thus ruled correctly that the exhibits were inadmissible unless the experts who prepared the documents testified under oath and were subject to cross-examination by the defendant. *See Lahr v. Lahr*, 82 N.M. 223, 224, 478 P.2d 551, 552 (1970) (noting that appraiser's written report on valuation of property was inadmissible unless appraiser had been subjected to cross-examination as to value placed on property).

## III. CONCLUSION

We hold that the trial court erred in ruling that Camino Real failed to prove by substantial evidence its damages for replacement of the sewage treatment plant, replacement of the leach field, and fines paid to the EID; however, we affirm the court's rulings on the damages for lost profits and diminution in value of the property and on the admissibility of the engineer's report and the appraisal. The judgment of the court is reversed and this action is remanded for further proceedings consistent with this opinion. On remand, the Estate should be afforded an opportunity to present evidence as if the motion to dismiss had been denied by the trial court. *See International Union, United Auto., Aerospace & Agric. Implement Workers of America, UAW v. Mack Trucks, Inc.*, 917 F.2d 107, 110–11 (3d Cir.1990) (discussing Fed.R.Civ.P. 41(b) (amended 1991)), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991). Although Camino Real need not again offer the evidence it has already introduced, it "should be allowed to supplement the present record, in chief or by rebuttal, with any evidence that could properly have been admitted at the first trial of these issues." *Riegel Fiber Corp. v. Anderson Gin Co.*, 512 F.2d 784, 793 (5th Cir.1975) (discussing Fed.R.Civ.P. 41(b) (amended 1991)).

IT IS SO ORDERED.

BACA, C.J., and RANSOM, J., concur.