J-A29010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ACT DEALERSHIPS, INC.,<br>D/B/A ANDRETTI AIRPORT TOYOTA, | : | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| D.A. MCLAREN, L.P. AND THEODORE A.<br>MCWILLIAMS, | : | |
| Appellee | : | No. 1862 WDA 2014 |

Appeal from the Order Entered October 15, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-07-15208

BEFORE: FORD ELLIOTT, P.J.E., BOWES AND MUSMANNO, JJ.

CONCURRING STATEMENT BY BOWES, J.: **FILED FEBRUARY 26, 2016**

I agree with the disposition of this appeal, but add the following observations. In this case, it is not contested that the lease that ACT Dealerships, Inc. ("ACT") entered with D.A. McLaren, L.P. ("McLaren") required McClaren to make roof repairs on the premises that ACT leased from it. Specifically, § 12.7 of the lease, which was entered on an unidentified date in October 2000, between ACT and McLaren for 798 Narrows Run Road, designated a list of items that ACT was required to repair or replace. The list included "heating, ventilating, air conditioning, plumbing, electrical and mechanical systems, facilities, equipment, fixtures and appliances and parts thereof; all door, windows, glass and hardware; all

floor ceiling and wall coverings; all painting and decorating; all paving and landscaping[.]"[1]  Any remaining repairs were "the sole responsibility of the lessor."  The lease required that McLaren provide ACT with thirty days notice to make repairs allocated to ACT; if the repairs are not made within that timeframe, then McLaren could effectuate the repairs and collect the cost against ACT.  Lease at § 12.8.  There was no corresponding obligation of notice to McLaren on ACT's part.

On February 28, 2007, ACT notified McLaren that the roof needed to be replaced and tendered an estimate that placed the cost of such remediation at $92,500.  McLaren responded that the roof did not need to be replaced at that time.  A few days after February 28, 2007, ACT sold its car dealership for $4,526,968.65.  The purchase price was reduced by $280,000 for "repairs and maintenance."  During discovery depositions, several witnesses testified that this credit for repairs and maintenance included the cost of replacing the roofs for both 798 and 800 Narrows Run Road.  No witness was able to set forth a precise amount that reflected the cost of roof replacement on 798 Narrows Run Road.  The buyer of the car dealership operated it for six years without repairing or replacing the roof.  McLaren eventually installed a new roof in 2013.

_____

[1] The lease is attached to the complaint, but was not given an exhibit number.

In this action, ACT claimed that it suffered damages, in the form of lowering the purchase price of the dealership, due to the state of disrepair of the roof and that McLaren was liable for this reduction because it was responsible, under the lease, for repairing and replacing the roof.

I agree with the majority that ACT cannot recover under these facts. Simply put, if McLaren had an obligation to repair or replace the roof as of February 28, 2007, then it still had that obligation after the sale of the dealership to the purchaser. McLaren would have no reason to expect that ACT would lower its purchase price to compensate the dealership's purchaser for a repair that was not ACT's responsibility to make. ACT was the legal cause of its own harm.

We have observed, "In order to recover for damages pursuant to a breach of contract, the plaintiff must show a causal connection between the breach and the loss." *Logan v. Mirror Printing Co. of Altoona, Pa.*, 600 A.2d 225, 226 (Pa.Super. 1991). The non-breaching party "is entitled to recover, unless the contract provides otherwise, whatever damages he suffered, **provided** (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty." *Id*. (emphasis in original). Herein, it was not reasonably foreseeable that ACT would reduce the purchase price for the business to pay for repairs that McLaren was

contractually obligated to make under the lease. This obligation survived the sale of the dealership, as evidenced by McLaren's 2013 replacement of the roof. These types of damages were not ones that would naturally and ordinarily result from the breach.

It is also significant that McLaren was not involved in the negotiations between ACT and the buyer and had no ability to contest or negotiate any amount that supposedly was subtracted from the purchase price based upon the state of the roof on 798 Narrow Run Road. Our Supreme Court has noted that contracting parties may "be presumed to contemplate the ordinary and natural incidents and consequences of performance or non-performance; but they are not supposed to know the condition of each other's affairs, nor to take into consideration any existing or contemplated transactions, not communicated nor known, with other persons." *Macchia v. Megow*, 50 A.2d 314, 316 (Pa. 1947).

McLaren was not aware that ACT was negotiating to sell its business and that the proposed buyer was taking the position that the roof had to be replaced. McLaren had no opportunity, within the few days accorded to it between dissemination of the notice and consummation of the sale, to refute either the cost of a replacement roof or to counter that repairs costing less than replacement would have solved any problem with the roof. McLaren should not be legally accountable for the decision of ACT to reduce the

purchase price to reflect the costs of a roof that ACT acknowledges was not its responsibility to repair.

Indeed, McLaren eventually did replace the roof six years later, in 2013. McLaren is not liable for mistakes that ACT made during the negotiations for the sale of the dealership and should not be legally obligated to pay twice for the cost of a new roof at 798 Narrows Run Road.