[Crim. No. 52.   Fourth Appellate District.—August 31, 1931.]

THE PEOPLE, Respondent, v. A. J. JONES, Appellant.

Ralph E. Swing for Appellant.

U. S. Webb, Attorney-General, Alberta Belford, Deputy Attorney-General, Stanley Mussell, District Attorney, and James L. King, Chief Deputy District Attorney, for Respondent.

GRIFFIN, J., *pro tem.*—Appellant was found guilty of murder in the first degree and sentenced to life imprisonment. A large number of witnesses testified at the trial. The testimony on the part of the witnesses for the state tended to show that appellant was guilty of murder in the first degree. Testimony of witnesses for appellant substantiated his plea of self-defense.

The evidence discloses that appellant, with his family and a number of relatives, including Monroe Hicks, the deceased, was residing in an auto camp on the outskirts of the city of Redlands in the county of San Bernardino. Appellant and his family lived in one tent and the relatives in other tents near by. They were there for the fruit-picking season. No trouble of any consequence had occurred between appellant and Monroe Hicks and there was no evidence of any ill feeling between them prior to the day of the homicide.

On Sunday, March 22, 1931, at about 10 o'clock in the morning, an altercation occurred in appellant's tent, his daughter screamed "Monroe!" and presently Monroe Hicks came out of his tent near by and over in front of appellant's tent. Appellant, who had been shaving, came out of his tent with an open razor in his hand, saying, "What did you come up here for, interfering with my family affairs?", to which Hicks replied, "Don't you come saying anything to me or you will get the worst of it."

The evidence as to what took place following this verbal altercation is conflicting. Witnesses for the state contend that appellant came out of his tent with an open razor in his hand and by striking and slashing at deceased forced him back to his own tent. Appellant denies this and claims that deceased put his hand to his right hip pocket, but that when he discovered that deceased had only a pair of orange clippers in his pocket they both went back to their tents.

Nothing of any consequence occurred during the day until about 4 o'clock in the afternoon when several of the relatives and appellant were out in front of the tents repairing an automobile tire. Appellant was sitting on the running-board of one car and several of the relatives were just opposite him and within eight or ten feet.

Deceased came out of his tent and walked up to where the others were grouped at the rear of the car. According

to the evidence, appellant opened the conversation by saying, "You needn't look so hard," and deceased replied, "Who wouldn't." Appellant arose from the running-board and started toward his tent, saying, "If you're not satisfied, I'll make you satisfied." As appellant walked toward his tent, deceased reached over into the automobile and picked up a portion of an automobile spring, or tire iron, and stood holding it with both hands behind his back. A heated conversation ensued. Appellant walked back about forty feet and took a pistol either from his tent or out of the trailer where his wife testified he had always kept it. Appellant came back toward Hicks carrying his pistol in front of him and demanded that deceased put the tire iron down. He snapped the pistol, but it failed to discharge. When the pistol snapped deceased "ducked forward". As he raised his head appellant shot him, the bullet piercing the heart and passing through his body. Deceased fell forward on his right side and face and appellant fired another shot into his left shoulder, and then as he rolled over on his face appellant stooped over him and fired a third shot into the center of his back. After the shooting appellant walked back to his tent and reloaded his gun. He talked to several persons, stating in substance that he had to kill the deceased to protect himself. He contends that deceased drew the tire iron back in a threatening manner and came toward him. There is evidence to show that deceased made no movement toward appellant and no words were spoken by him after appellant came towards him with the pistol.

Appellant presents six grounds for a reversal of the judgment. He contends, first, that the court erred in instructing the jury. He urges that People's instruction number 7, which is a general instruction on a long printed form consisting of several pages, was erroneous and misleading.

In this instruction the court correctly instructed the jury on murder and malice as defined in sections 187, 188 of the Penal Code respectively, and on the degrees of murder as defined in section 189 of the Penal Code, and also manslaughter as set forth in section 192 of the Penal Code. Then it explained fully the distinguishing features and degrees of the several offenses.

Appellant's most serious contention appears to be based on the following portion of this instruction: "If the unlaw-

ful killing is done without the provocation and sudden passion which reduces the offense to manslaughter, or is done in the commission of an unlawful act, the natural consequences of which are dangerous to life, or is committed in the attempt to perpetrate a felony other than those mentioned in the description of murder in the first degree, or the circumstances of the killing show an abandoned heart, this is murder of the second degree, unless the evidence proves the existence in the mind of the slayer of the specific intent to take life. If such specific intent exists at the time of such unlawful killing, the offense committed would of course be murder in the first degree.''

While it may be true that this last sentence, when isolated from the remainder of the instruction and read alone, and omitting the elements of premeditation and deliberation, would not be a complete and correct definition of murder of the first degree, yet when read in conjunction with the whole instruction, and the other instructions, it could leave no question in the mind of any juror as to all of the elements of, and the definition of murder of the first degree. The jury was told several times in other portions of the instruction in no uncertain terms that deliberation and premeditation were necessary elements of first degree murder. Substantially this same contention was presented in the case of *People* v. *Watts,* 198 Cal. 776–800, 801 [247 Pac. 884, 893]. In that case the court said: ''There is no basis for the claim that the trial court charged that defendant could be found guilty of murder in the first degree without including in the charge the essential elements of deliberation and premeditation. . . . Before the court gave the instruction . . . It had carefully charged the jurors that to constitute murder in the first degree the killing must be preceded by and be the result of a concurrence of will, deliberation, and premeditation on the part of the slayer. They were also told that, to justify a conviction, every element of the crime must be established by the prosecution beyond a reasonable doubt.''

This is just the situation in the case before us and we may adopt the language of the court set forth in the Watts case as follows: ''All the instructions, read and considered together as one charge, without straining the language, show a fair, harmonious and correct statement of the law applicable to the facts of the case, and contain all the con-

ditions and limitations which are omitted from the isolated excerpts selected by appellant for criticism."

Appellant contends that no sufficient definition of murder in the second degree was given and that the refusal of his instruction thereon was error. The jury was given the statutory definition as heretofore stated which would of itself be sufficient. In addition to this the general instruction above referred to elaborates upon this definition sufficiently to leave no doubt as to the meaning of murder in the second degree.

Appellant further contends that the court misdirected the jury on the question of reasonable doubt. The statutory definition of reasonable doubt was given *verbatim* and was in itself sufficient. (Sec. 1096a, Pen. Code.) It was supplemented by another instruction repeating the statutory definition and elaborating thereon which in substance was a correct statement of the doctrine. (*People* v. *Lewandowski,* 143 Cal. 574–580 [77 Pac. 467].)

Appellant further contends that the court erred in refusing his instructions numbers 11 and 19; and that no sufficient instruction on the principle of self-defense was given and that by reason of such refusal the court erred. The jury was correctly, fully and completely charged upon the definition of murder and manslaughter in all of its phases in the general instruction. As to self-defense, the jury was fully and correctly charged thereon in three of the state's instructions and in four of appellant's given instructions. The court is not required to state the law to the jury more than once, but may refuse requested instructions which are fully covered by other instructions. (8 Cal. Jur. 314.)

We have examined all of the instructions given by the trial court and we find that taken as a whole they were full and fair, and that, read as a whole, they are not to be held subject to the criticism which appellant aims at portions of particular ones The particular instructions against which appellant directs such criticism are not fairly subject thereto, nor could the jury in considering the same have been misled thereby.

Appellant's second ground of appeal is that the court erred in refusing to direct a mistrial by reason of misconduct of the district attorney. The first assignment of error

under this point arose out of a remark made by the district attorney in his opening statement to the jury, which related to the actions of appellant's wife and intimating that appellant was disagreeable and quarreled with her in the forenoon of this particular day. Appellant's attorney immediately objected and asked that the court admonish the jurors to disregard the statement. The court very promptly and emphatically admonished them to disregard it and the district attorney to refrain from alluding to it further. This cured the error, if any there was. Other objections were made throughout the trial to remarks by the district attorney and the court. The court on many occasions instructed the jurors to disregard any remarks made by *counsel* or the *court* and *not to consider them as evidence or proof of any fact.*

■ In his third ground of appeal appellant makes objection to remarks in the district attorney's closing argument upon the ground that they were improper conclusions and there was no evidence to support them. In this argument the following took place: "Mr. King: These boys will be better men when they grow up if they are not in the environment of this father, and this mother's life will be better and a few years longer if this defendant is not living with her day after day; so he is not entitled to very much sympathy, ladies and gentlemen. He is a great man, as Mr. Bates calls him, and the head of the whole outfit. Mr. Eckhardt: I submit to your Honor that it is not in the evidence, and I object to it and assign it as prejudicial misconduct, and not based on the evidence. Mr. King: That is a conclusion deducted from the evidence. The Court: It is a conclusion deducted from the evidence. Proceed. Mr. King: So I say, gentlemen of the jury, this man was the head of the outfit. He had boys of his own: This man's leadership capacity was shocked, and he shot that man as he would have shot a dog that was barking at his heels." Appellant contends that the court not only failed to rule properly but added judicial commendation to the argument of the district attorney. This argument, and the reason given by the court for its ruling, might better have been unsaid, yet counsel has a right to present to the jury his views of the proper deductions or inferences to be

drawn from the evidence. (*People* v. *Willard,* 150 Cal. 543–552 [89 Pac. 124].)

Appellant also objected to certain questions as leading. The record shows that many of the objections to the questions cited in the brief were sustained by the court, and that when overruled, the ruling thereon was proper. Other points raised are without merit.

Appellant has presented to this court on appeal a lengthy but comprehensive brief reflecting much energy and diligence. Considering all the facts in the case, and all of the instructions read and considered together as one charge, they show a fair, harmonious and correct statement of the law applicable to the facts of the case. This has repeatedly been held to obviate such objections as are now made. (*People* v. *Doyell,* 48 Cal. 85; *People* v. *Dennis,* 39 Cal. 625; *People* v. *Nelson,* 56 Cal. 77; *People* v. *Watts, supra.*)

The record discloses that the trial consumed approximately five days. It likewise reveals that appellant was given every opportunity to present his case. We believe, after a careful examination of the entire record, that he was accorded a fair and impartial trial and that his conviction of murder in the first degree is amply supported by the evidence. We find no errors that would justify a reversal.

The judgment and the order denying a new trial are affirmed.

Jennings, Acting P. J., and Marks, J., concurred.