689 P.2d 934

Virginia GARCIA, as Personal Representative of the Estate of Richard Garcia, Deceased, Plaintiff-Appellant,

v.

AMERICAN FURNITURE COMPANY, Defendant-Appellee.

No. 7512.

Court of Appeals of New Mexico.

Aug. 23, 1984.

Certiorari Denied Oct. 18, 1984.

Eugene E. Klecan, Klecan & Santillanes, P.A., Albuquerque, for plaintiff-appellant.

Michael L. Danoff, Michael Danoff & Associates, P.C., Albuquerque, for defendant-appellee.

## OPINION

WOOD, Judge.

Richard Garcia was coach and manager of a softball team.[1] On Sunday, April 4, 1982, Richard left home about 12:30 p.m. and returned about 5:30 p.m. During this period he was driven to a practice field; the team practiced about two hours; after practice new uniforms were distributed and some of the team members went to a Pizza Hut; and Richard was returned to his home. There is an inference from the evidence that Richard died during the evening of April 4, 1982. Plaintiff, as personal representative of Richard's estate, sued under New Mexico's Minimum Wage Act. NMSA 1978, §§ 50–4–20 through –30 (Orig. Pamp. and Cum.Supp.1984). The complaint sought payment for six hours of "work" in connection with team activities on April 4, 1982, liquidated damages and attorney fees. Section 50–4–26. The trial court ruled against plaintiff at the close of plaintiff's case; plaintiff appealed. We discuss: (1) dismissal at the close of plaintiff's case, and (2) the meaning of employment under the Minimum Wage Act.

### Dismissal at Close of Plaintiff's Case

It was a nonjury trial. The trial court dismissed at the close of plaintiff's case-in-chief. The trial court made findings of fact and conclusions of law, and entered judgment dismissing the complaint with prejudice "pursuant to the Court's granting of Defendant's Motion to Dismiss." This procedure was authorized by NMSA 1978,

---

1. The trial court referred to the team as a baseball team. Counsel refer to both a baseball and a softball team. A team member said it was a softball team. The type of "ball" played makes no difference in this case. We use "softball" on the basis that the team member's knowledge was superior to that of counsel or the court.

Civ.P. Rule 41(b) (Repl.Pamp.1980). The trial court weighed the evidence, gave the evidence the weight the court believed it deserved, and dismissed. This was a judgment on the merits. *Herbert v. Sandia Savings & Loan Association*, 82 N.M. 656, 486 P.2d 65 (1971).

Plaintiff contends that defendant did not move for dismissal under Civ.P. Rule 41(b). The words defendant's counsel used were: "[A]t this time I move for a directed verdict * * *." The use of the words "directed verdict" were inappropriate because there was no jury. *See* NMSA 1978, Civ.P.R. 50(a) (Repl.Pamp.1980). This being a non-jury trial, the motion for a directed verdict was, in effect, a motion to dismiss under Civ.P.Rule 41(b). *Vallejos v. C.E. Glass Co.*, 583 F.2d 507 (10th Cir.1978); *see Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474 (3d Cir.1979); 5 J. Moore, J. Lucas & J. Wicker, *Moore's Federal Practice* ¶ 41.13[1] at 41–177 (2d ed. 1982). *See also Herbert v. Sandia Savings & Loan Association* where there was a motion under Civ.P.Rule 41(b), and the headnote refers to the motion as a motion for a directed verdict.

Plaintiff also contends that the trial court did not dismiss the case under Civ.P. Rule 41(b). According to plaintiff, the trial court ruled as a matter of law that plaintiff had no cause of action. "Under this approach, all evidence favorable to the plaintiff together with all inferences favorable thereto are accepted. The rules for a Directed Verdict should apply." *See Archuleta v. Pina*, 86 N.M. 94, 519 P.2d 1175 (1974), for how a trial court must view the evidence in ruling on a motion for a directed verdict. Plaintiff's argument is based on a trial court finding "that no prima facie case has been made" and a conclusion "that there was no judiciable cause of action * * *." Plaintiff's argument disregards the context of the finding and conclusion. Considering all of the trial court's findings and conclusions, particularly the evidentiary details revealed therein, it is clear that the trial court did weigh the evidence and did enter a judgment on the merits under Civ.P. Rule 41(b). We refer to several of the evidentiary findings in the next issue.

## Employment Under the Minimum Wage Act

Section 50–4–21 states:

As used in the Minimum Wage Act [50–4–19 to 50–4–30 NMSA 1978]:

A. "employ" includes suffer or permit to work;

B. "employer" includes any individual, partnership, association, corporation, business trust, legal representative or any organized group of persons employing one or more employees at any one time, acting directly or indirectly in the interest of an employer in relation to any employee, but shall not include the United States, the state or any political subdivision thereof; and .

C. "employee" includes any individual employed by any employer * * * [with exclusions not pertinent in this case].

The Minimum Wage Act was enacted by 1955 N.M.Laws, ch. 200. The above-quoted definitions were included in the original enactment and have not been changed, although Section 50–4–21 has been amended frequently. See the history line to Section 50–4–21. The above-quoted definitions require an employee-employer relationship.

Plaintiff contends that the evidence showed that Richard worked for defendant. He refers us to evidence, essentially uncontradicted, that the name of the team was the name of the defendant; that this name was on the uniform worn by team members; and that defendant financed a portion of the costs of the team. Plaintiff's view is that the use of defendant's name and its financial support of the team constituted advertising, helped labor relations and good will, and these items were directly and indirectly beneficial to defendant.

Plaintiff's "benefit" argument is based on a misreading of Section 50–4–21(B). The phrase "acting directly or indirectly in the interest of an employer" is concerned with an entity identifiable as "an employer in relation to any employee * * *." This portion of the statute, which defines "em-

ployer" does not determine who is an employee. *See Donovan v. Sabine Irrigation Co.*, 695 F.2d 190 (5th Cir.1983).

Plaintiff asserts that defendant employed Richard because it suffered or permitted Richard to coach and manage the team, and Richard had been the coach since the team was formed in 1979 or 1980. Plaintiff contends that Richard "worked" for defendant on April 4, 1982, because Richard arranged for the team practice on that day, participated in that practice and distributed new uniforms at the conclusion of the practice. According to plaintiff, all of this was in the interest of defendant. The trial court did not agree.

The trial court found that Richard was not employed by defendant. Richard had left his employment with defendant in 1980 and gone to work for another business. The trial court found that Richard was not paid for coaching and managing the team and "[i]t was never contemplated or agreed that Richard * * * was to be paid for coaching or managing * * *." Richard was not an exception, nobody on the team was paid or expected to be paid. The trial court found that the team was not related to employment by defendant. Some members of the team were employees of defendant, some were not. The trial court found that team membership was voluntary; that Richard's participation was solely on a voluntary basis; that team members decided who would be on the team; that defendant had "no control or any input" concerning the team or who would be on the team. The evidence is that defendant made a financial allowance to the team of a fixed amount each year. The team determined how the allowance would be spent—registration fee for the city league, uniforms, equipment, travel expenses. Any expenses over and above defendant's allowance were the team's responsibility, and such expense was met by team members. The trial court also found that Richard had no employment contract with defendant.

In the preceding paragraph, we have referred to trial court findings and evidence supporting the findings. The findings are supported by substantial evidence. Plaintiff contends the findings and evidence are largely irrelevant and argues that facts such as pay, contract, control and voluntary action have nothing to do with a minimum wage claim. Specifically, plaintiff asserts that the findings and evidence we have reviewed have nothing to do with whether defendant suffered or permitted Richard to work.

■ In arguing the meaning of "work," both parties cite extensively to workmen's compensation cases. We do not consider these cases because they deal with statutory definitions which differ from the definitions in the Minimum Wage Act. *Compare* Section 50–4–21(A) *with* NMSA 1978, Section 52–1–16 (Cum.Supp.1984), which defines "workman" for compensation purposes. Plaintiff was unsuccessful in the separate worker's compensation suit, see Memorandum Opinion in *Garcia v. American Furniture Co.*, Ct.App. No. 7796 (Filed June 21, 1984). That result does not dispose of the minimum wage claim.

The definitions in Section 50–4–21, quoted above, are similar to definitions in the Fair Labor Standards Act of 1938, a federal statute which dealt with minimum wages for employees engaged in or providing goods for interstate commerce. *See* 29 U.S.C.A. § 203(d), (e) and (g) (1978). The definition of "employ" is almost identical. Accordingly, it is appropriate to look to decisions of federal courts determining the meaning of "employ" in the federal statute, and to consider those federal decisions as persuasive authority in deciding the meaning of "employ" in the New·Mexico statute. *Benavidez v. Benavidez*, 99 N.M. 535, 660 P.2d 1017 (1983); *Featherstone v. Bureau of Revenue*, 58 N.M. 557, 273 P.2d 752 (1954); *Lopez v. Singh*, 53 N.M. 245, 205 P.2d 492 (1949).

*Walling v. Portland Terminal Co.*, 330 U.S. 148, 150–151, 152, 67 S.Ct. 639, 640, 641, 91 L.Ed. 809 (1947), discussed whether trainees were employees under the federal statute, stating:

The Fair Labor Standards Act fixes the minimum wage that employers must

pay all employees who work in activities covered by the Act. There is no question but that these trainees do work in the kind of activities covered by the Act. Consequently, if they are employees within the Act's meaning, their employment is governed by the minimum wage provisions. But in determining who are "employees" under the Act, common law employee categories or employer-employee classifications under other statutes are not of controlling significance. See *N.L.R.B. v. Hearst Publications*, 322 U.S. 111, 128–129 [64 S.Ct. 851, 859, 88 L.Ed. 1170 (1944) ] This Act contains its own definitions, comprehensive enough to require its application to many persons and working relationships which, prior to this Act, were not deemed to fall within an employer-employee category. See *United States v. Rosenwasser*, 323 U.S. 360, 362–363 [65 S.Ct. 295, 296, 89 L.Ed. 301 (1945) ].

\*　　\*　　\*　　\*　　\*　　\*

Section 3(g) of the Act defines "employ" as including "to suffer or permit to work" and § 3(e) defines "employee" as "any individual employed by an employer." The definition "suffer or permit to work" was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another. \* \* \* [S]uch a construction would sweep under the Act each person who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit. \* \* \* The Act's purpose as to wages was to insure that every person whose employment contemplated compensation should not be compelled to sell his services for less than the prescribed minimum wage. The definitions of "employ" and of "employee" are broad enough to accomplish this. But, broad as they are, they cannot be interpreted so as to make a person whose work serves only his own interest an employee of another person who gives him aid and instruction.

*Walling v. Jacksonville Terminal Co.*, 148 F.2d 768, 770 (5th Cir.1945), states: "A purely voluntary service, for which no one intends there shall be pay, is not employment, but a gift. \* \* \* The words 'suffer or permit to work' must be understood with common sense."

*Bowman v. Pace Co.*, 119 F.2d 858, 860 (5th Cir.1941), states:

It is not the purpose of the Fair Labor Standards Act to create new wage liabilities, but where a wage liability exists, to measure it by the standards fixed by law. If one has not hired another expressly, nor suffered or permitted him to work under circumstances where an obligation to pay him will be implied, they are not employer and employee under the Act.

■ In determining whether a person is an employee under the Minimum Wage Act "the ultimate issue is whether as a matter of 'economic reality' the particular worker is an employee." *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1189 (5th Cir.1979). This ultimate issue is a question of fact which requires consideration of the "total employment situation. \* \* \*" *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669 (5th Cir.1968).

■ Facts such as pay, contract, control and voluntary action are part of the total employment situation which disclose the economic reality. The trial court's findings and the substantial evidence supporting the findings were relevant to plaintiff's minimum wage claim that Richard worked for defendant in coaching and managing the softball team. The trial court's findings support the conclusions that Richard was not an employee and that plaintiff was not entitled to recover under the Minimum Wage Act.

■ The trial court's findings, which were relevant and supported by substantial evidence, do not, as plaintiff claims, show judicial bias against minimum wage claimants. As to this claim of bias, see *Armijo v. Albuquerque Anesthesia Services, Ltd.*,

101 N.M. 129, 679 P.2d 271 (Ct.App.1984). Plaintiff also asserts that a representative of defendant attempted to create bias because the representative testified that, in denying the wage claim, he did not evaluate the Minimum Wage Act. This assertion overlooks the representative's testimony that hours spent in participation with the softball team were not work for the company.

This case was set on the September docket for oral argument. The setting is vacated; oral argument is unnecessary. *Garcia v. Genuine Parts Co.*, 90 N.M. 124, 560 P.2d 545 (Ct.App.1977).

The judgment of the trial court is affirmed. Plaintiff is to bear the appellate costs.

IT IS SO ORDERED.

DONNELLY, C.J., and HENDLEY, J., concur.