# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **March 2, 2015**

**NO. 32,338**

**JANEKA MAYER,**

Plaintiff-Appellee,

v.

**SUSAN SMITH,**

Defendant,

and

**MARILYN JONES, GARY JONES,
ROBERT LONG, and STEPHANIE LONG,**

Intervenors/Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Clay Campbell, District Judge**

Alex Chisholm
Albuquerque, NM

for Appellee

Ronald T. Taylor
Albuquerque, NM

for Appellants

**OPINION**

**KENNEDY, Judge.**

{1}     Janeka Mayer (Plaintiff) owns property which is burdened by an easement. She erected a fence using trees within the easement as posts and thus encroached onto the easement. Gary and Marilyn Jones (Jones) and Robert and Stephanie Long (Long) (collectively, Intervenors), owners of the dominant estate, intervened in a suit Plaintiff had filed against another neighbor, but involving the same easement. Jones and Long sought to enforce the easement and force removal of Plaintiff's fence. The district court ruled against Intervenors, restricting the scope and ownership of the easement and leaving the fence undisturbed. We reverse and remand for further proceedings.

**I.     BACKGROUND**

{2}     The physical relationships between properties are depicted in the appended illustration, which appears in the record as Intervenors' Exhibit F, provided to aid in understanding the facts presented herein.

{3}     Jones bought his property, Tract 5B and 5C, in 1977. In 1979, he purchased an easement from Anne Clarke and Peggy Clarke (Clarke). Carlos Arguello bought Tract 5A, immediately north of Tract 5B and 5C from Clarke. In 2002, Plaintiff purchased land, Tract 5-1B, from Arguello. It is undisputed that land was subject to

the easement Jones purchased from Clarke in 1979. The easement served Tracts 5B and 5C, which Jones has owned since 1972. In addition to a detailed description of the servient estate, the easement at issue provides the following language:

> WHEREAS, the family of . . . Jones [seeks] a non[-]exclusive [e]asement across the lands of the "grantors" for the personal use of theirselves, their families, their heirs, and their assigns, for ingress and egress over and across "grantors" property for household purposes[.]

> NOW, THEREFORE, for valuable consideration . . . , the undersigned hereby grant to . . . Jones, and to their families, heirs, and assigns, the non[-]exclusive right of ingress and egress, for household and non[-]commercial purposes, over and across a [t]wenty[-]foot[-]wide portion of the afore described property inside and along the [n]orthernmost and [w]esternmost boundaries thereof.

Jones cleared trees to create the path that is in the easement now and used it to access a portion of his land that was inaccessible by vehicle via any other existing roads due to a "boulder strewn and tree covered, eroded, and very steep" ridge that divided his property. Jones used the land "at least [fifty] times a year . . . for landscaping, . . . wood cutting, pinon picking, [and] picnicking[,]" and his sons learned how to drive there. The easement was occasionally used to bring in a wood chipper to dispose of unwanted brush piles, and Jones plowed the easement to remove snow. In 2009, Jones sold a portion of his land, specifically Tract 5C, which was accessible using other existing roadways, to Long. The tracts owned by Jones and Long together make up the dominant estate as Jones owned it when the easement was purchased in 1979.

After the sale to Long of Tract 5C, the easement on Plaintiff's property was the only vehicular access to Tract 5B, which Jones still owns.

**{4}** This lawsuit began when Plaintiff brought suit against another neighbor to prevent the cutting and removal of trees within the easement. Intervenors intervened at the district court's invitation in order to enforce their rights against Plaintiff to allow them full use of the twenty-foot easement over the servient estate. As the trees grew in the easement, Plaintiff used her fence to include them in her property, resulting in a nine- to eleven-foot area becoming inaccessible to Intervenors.

**{5}** In the district court, Intervenors presented their case.[1] Plaintiff moved for directed verdict. The district court stated: "I'm granting in part and denying in part the motion for [d]irected [v]erdict." In its written judgment, the district court stated that "[t]he dominant estate belongs to the property of . . . Long" and "does not, as a matter of law, belong to both Intervenors." The district court held that "[t]he intended use of the easement was for household purposes, which was historically limited to occasional use as a hiking . . . [and] vehicle [trail]." Next, the district court limited Intervenors' rights to the easement by stating that they had "no authority to expand

---

[1]An intervenor's burden is that which would have existed if he or she had been an original party in the suit. "If he tenders an affirmative issue which is met with a denial, he must assume the burden of proof." *Maldonado v. Haney*, 1980-NMCA-053, ¶ 18, 94 N.M. 335, 610 P.2d 222 (Lopez, J. dissenting) (internal quotation marks and citation omitted).

the historic use, boundaries[,] or existing cleared portion of the easement." The district court allowed for Plaintiff's fence to remain inside the easement boundaries.

{6} On appeal, neither party attacks the validity of the original twenty-foot easement. Similarly, both parties agree that the easement is appurtenant. We therefore treat the validity and terms of the appurtenant easement as fact on appeal. *Varos v. Union Oil Co. of Cal.*, 1984-NMCA-091, ¶ 2, 101 N.M. 713, 688 P.2d 31 (acknowledging facts that are not disputed become facts on appeal); *see Kikta v. Hughes*, 1988-NMCA-105, ¶ 12, 108 N.M. 61, 766 P.2d 321 (allowing characterization of easement to become a fact on appeal where both parties characterized easement at issue as an appurtenant easement).

**II.     DISCUSSION**

**A.     Standard of Review**

{7} Although Plaintiff presented a "legal argument for [d]irected [v]erdict," the district court, having heard Intervenors' evidence and given its findings, acted as a trier of fact. As such, the motion was actually a motion for involuntary dismissal as provided for by Rule 1-041(B) NMRA. *Garcia v. Am. Furniture Co.*, 1984-NMCA-090, ¶ 3, 101 N.M. 785, 689 P.2d 934 (stating that, in a non-jury trial, "motion for a directed verdict was, in effect, a motion to dismiss under . . . Rule [1-041(B)]").

4

**{8}** Rule 1-041(B) provides for the dismissal of an action upon the motion of the defendant after the close of the plaintiff's case-in-chief on the ground that, "upon the facts and the law[,] the plaintiff has shown no right to relief." The district court as trier of the fact may then "render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence." *Id.* A dismissal operates as an adjudication upon the merits unless the district court specifies otherwise in its order for dismissal. *Id.* A judge, deciding an involuntary dismissal, "is not bound to give [the] plaintiff's testimony the most favorable aspect[,] but rather should give the testimony such weight as it is entitled to receive." *Carlile v. Cont'l Oil Co.*, 1970-NMCA-051, ¶ 28, 81 N.M. 484, 468 P.2d 885.

**{9}** Appellate courts "uphold an involuntary dismissal under Rule 1-041(B) if the dismissal is rationally based on the evidence." *Hull v. Feinstein*, 2003-NMCA-052, ¶ 14, 133 N.M. 531, 65 P.3d 266. On appeal, evidence is examined "only to the extent necessary to determine whether it gives substantial support to the [district] court's findings." *Worthey v. Sedillo Title Guar., Inc.*, 1973-NMSC-072, ¶ 7, 85 N.M. 339, 512 P.2d 667. Substantial support is that "which is acceptable to a reasonable mind as adequate support for a conclusion." *Id.* The appellate courts view evidence in the "most favorable light to support the findings, and evidence inconsistent with or unfavorable to the findings will be disregarded." *Id.*

{10} At trial, the district court stated that, in granting the directed verdict, it was "taking all the evidence in the light most favorable to the party putting on the case . . . and giving them any benefit of the doubt." We note that, under *Carlile*, this is an incorrect standard. *See* 1970-NMCA-051, ¶ 28. The parties failed to address the issue of whether the district court was applying the correct evidentiary standard during the trial and continued to ignore the issue on appeal. Thus, we do not address it. *See In re Doe*, 1982-NMSC-099, ¶ 3, 98 N.M. 540, 650 P.2d 824 (indicating that an appellate court should not reach issues that the parties have failed to raise in their briefs).

**B.      Scope of the Easement**

**1.      An Unambiguous Easement Agreement Sufficiently States the Parties' Intent; Evidence of Intent Extrinsic to That Agreement Is Irrelevant**

{11} The existence and scope of an express easement are "determined according to the intent of the parties." *Skeen v. Boyles*, 2009-NMCA-080, ¶ 18, 146 N.M. 627, 213 P.3d 531. The intent of the parties is derived from the language of the agreement. *Id.* "[T]he written language of an easement should be conclusive, and consideration of extrinsic evidence is generally inappropriate." *Dethlefsen v. Weddle*, 2012-NMCA-077, ¶ 12, 284 P.3d 452. Furthermore, "[w]here . . . the grant or reservation is specific in its terms, *it is . . . decisive of the limits of the easement.*" *Dyer v. Compere*, 1937-NMSC-088, ¶ 12, 41 N.M. 716, 73 P.2d 1356. (Emphasis added.)

6

If the easement language is ambiguous, however, " 'the parties' intention must be determined from the language of the instrument as well as from the surrounding circumstances.' " *Dethlefsen*, 2012-NMCA-077, ¶ 12 (quoting *Sanders v. Lutz*, 1989-NMSC-076, ¶ 8, 109 N.M. 193, 784 P.2d 12). As such, we must determine whether the written agreement in this case is ambiguous.

**a.        The Easement Is Unambiguous**

{12}        None of the parties nor the district court ever intimated a belief that the grant of easement in this case was ambiguous. In *Dethlefsen*, this Court conducted a lengthy analysis of easement ambiguity. While concluding that the easement documents in question unambiguously reserved a fifty-foot-wide easement, we also concluded that the easement's scope was ambiguous. This conclusion was based on the omission of necessary terms: "(1) the nature and purpose of the easement, (2) an identification of each of the dominant estate holders, and (3) its duration." *Dethlefsen*, 2012-NMCA-077, ¶ 19. Similarly, we concluded that a "lack of a definite location [led] to an ambiguity." *Id.* ¶ 22. Just as the *Dethlefsen* Court determined there was an unambiguous reservation of a fifty-foot-wide easement, we determine there is an unambiguous reservation of a twenty-foot easement. As such, we next analyze the easement in the context of each of these sources of ambiguity to determine whether the scope of the easement is ambiguous.

{13}     First, unlike in *Dethlefsen*, where we determined a right of ingress and egress was "not definitive as to the specific nature and purpose of the easement[,]" *id.* ¶ 19, the easement agreement's stated purpose in this case provides for ingress and egress, for personal use, and for household and non-commercial purposes.  Taken together, these phrases clearly identify the nature of the use as non-commercial and personal and the purpose of the easement as a right of access.  Next, the easement agreement adequately identifies "each of the dominant estate holders" as *Dethlefsen* suggested was necessary.  *Id.*  The agreement grants an easement "to . . . Jones, and to their families, heirs, and assigns[.]"[2]  Next, *Dethlefsen* looks for information in the easement agreement disclosing the duration of the easement.

{14}     An easement terminates when it expires by its terms.  Where no definite term is established, the duration of an express easement is indeterminate.  Restatement (Third) of Property: Servitudes § 4.3 cmt. e (2000) ("The duration of most servitudes is left indefinite because they are created to implement arrangements whose useful lives cannot be predicted when they are created. . . . When no definite term is established in the creation of the servitude, its term is indeterminate under the rule stated in this subsection.  This rule applies to . . . expressly created servitudes.").  As

---

[2]The easement agreement grants the easement to John and Patricia Shows as well.  As they are not involved in this lawsuit in any way, that language from the agreement has been omitted.

8

such, the duration of Jones's easement is indeterminate. Finally, the easement agreement at issue identifies a definite location: "A [t]wenty[-]foot[-]wide portion of the afore described property inside and along the [n]orthernmost and [w]esternmost boundaries thereof." *See Dethlefsen*, 2012-NMCA-077, ¶¶ 22-23 (identifying easement as "the [s]outherly twelve . . . feet of the above described property" as an example of unambiguous easement language which "plainly answered" all of the legally relevant questions (internal quotation marks and citation omitted)).

{15} In this easement, the purposes are listed, the dominant estate holders clearly set out, the dimensions of the easement unequivocal, the duration unlimited, and the location clearly identified. Absent any of the ambiguity discussed above, which has been the basis for a determination of ambiguity in our previous easement cases, we conclude that the easement agreement at issue in this case is unambiguous. Because the easement agreement is unambiguous, easement law demands that the intent of the parties and, therefore, the scope of the easement be derived from the written agreement alone and that the circumstances surrounding the creation of the agreement not be considered. *See Brooks v. Tanner*, 1984-NMSC-048, ¶ 18, 101 N.M. 203, 680 P.2d 343 ("Here, we are presented with a specific, straightforward reservation of an easement. We find the intentions of the parties to be clear from the language utilized in the contract. The terms of the easement reservation . . . are specific and

unambiguous. There is no need for reference to extrinsic evidence; the terms of the reservation are decisive of the limits of the easement.").

**b.      The District Court Misused the Extrinsic Evidence**

{16}    The district court used extrinsic evidence to limit the easement's scope based on what it interpreted the parties' intentions to be. Although Intervenors' counsel pointed out that a court cannot go beyond the written language of the easement when the writing clearly states the intent of the parties, the district court responded that "there is actually an opportunity to go beyond the four corners of the agreement to provide me with information about the facts surrounding the circumstances at the time this was purchased." The district court lamented that it had "almost zero testimony concerning the circumstances surrounding the purchase of the easement." In support of its conclusion that it could consider evidence extrinsic to the agreement, the district court cited to three authorities: (1) *Luevano v. Group One*, 1989-NMCA-061, 108 N.M. 774, 779 P.2d 552; (2) *Camino Sin Pasada Neighborhood Ass'n v. Rockstroh*, 1994-NMCA-164, 119 N.M. 212, 889 P.2d 247; and (3) the "current state of the law . . . with respect to contracts."

{17}    These authorities do not support the district court's conclusion. *Luevano* and *Camino Sin Pasada* are inapposite in a case such as this where the easement is clearly defined in length, width, parties, location, and purpose, and where the nature of the

10

grant is undisputed. *See Aladdin Petroleum Corp. v. Gold Crown Props., Inc.*, 561 P.2d 818, 822 (Kan. 1977) (stating that where the width, length, and location of an easement for ingress and egress have been expressly set forth in the instrument, the easement is sufficiently specific and definite that considerations of present use of the dominant estate are not controlling). In *Luevano*, this Court addressed whether the defendants had a valid easement and whether that easement was assignable absent any express reference to land owned by grantees and without language specifying whether the easement stated was appurtenant or in gross. 1989-NMCA-061, ¶¶ 1, 11. Here, neither the validity nor boundaries of the easement are questioned. And the parties agree that the easement was appurtenant. In *Camino Sin Pasada*, we addressed whether the intent to create an easement existed where the language in the deed at issue was ambiguous and, therefore, "susceptible of clarification through the use of extrinsic evidence." 1994-NMCA-164, ¶¶ 6, 8. The ambiguities and missing terms that gave rise to a consideration of extrinsic evidence in *Luevano* and *Camino Sin Pasada* simply do not exist in this case. Neither the parties nor the district court suggested ambiguity existed, and neither party points to a single place in the record where ambiguity was asserted or argued. This Court has established a distinction between contract interpretation and easement interpretation with regard to extrinsic evidence. *See Dethlefsen*, 2012-NMCA-077, ¶ 12 ("Unlike contract construction, the

written language of an easement should be conclusive, and consideration of extrinsic evidence is generally inappropriate.").

{18} We pause here to clarify that we do not fault the district court for admitting evidence extrinsic to the written agreement given that both parties offered such evidence. Rather, we find the district court's use of that evidence in determining the parties' intent impermissible in light of the unambiguity of the easement agreement.

**2. The Dominant Estate Owners Must Have Access to the Easement's Full Twenty Foot Width**

{19} As explained above, the written language of the easement agreement in this case lays out the width, length, location, and purpose of the easement and reflects a clear intention to create a twenty foot wide easement. The scope of an easement must conform to the intent of the parties who created it by express agreement. *See Skeen*, 2009-NMCA-080, ¶ 18.

**a. The District Court's Ruling Perpetuated an Unlawful Encroachment**

{20} The district court's judgment allowed for Plaintiff's fence to remain inside the twenty foot easement and prohibited the dominant estate owner from returning the easement to the width provided for by its terms. The judgment specified that the easement was limited to the "existing cleared portion" of land and had to remain as it stood before the lawsuit. The easement provides for a twenty-foot-wide easement. Plaintiff admits she placed her fence well inside the twenty-foot easement, limiting

12

it to approximately nine- to eleven-feet wide in some places. In order for Intervenors to access all twenty feet of the easement they have been granted, Plaintiff's fence must be removed.

**3.** **Historic Limitations Applied to the Easement and Dominant Estate Were Impermissible**

{21} The determinative factor in defining the scope of an appurtenant easement is the intent of the parties. That intent is interpreted from the language of the unambiguous agreement. *See Skeen*, 2009-NMCA-080, ¶ 18. The district court erroneously relied on extrinsic evidence by considering testimony regarding use of the easement and dominant estate since the easement's creation in 1979.

{22} The testimony which the district court relied on in limiting the easement was as follows. Jones testified that he and his family used the easement a minimum of fifty times per year to access Tract 5B in order to gather stones, cut wood, pick pinons, and picnic. Jones also testified that the easement was occasionally used for bringing in a wood chipper to clear brush and that he plowed snow from it, but Plaintiff's fence now prohibits plowing.

{23} The district court restricted the scope of the easement to household purposes and limited household purposes to the historic uses of the easement. The district court's determination, by focusing solely on the "household purposes" language of

13

the agreement, ignores that the easement also permits any non-commercial purposes, as well as an otherwise unqualified right of ingress and egress.

{24} This Court has previously held that a right of "ingress and egress" allows for "access to the land in question plus the [c]rossing of another's land in order to obtain this access." *Martinez v. Martinez*, 1979-NMSC-104, ¶ 8, 93 N.M. 673, 604 P.2d 366 (defining "right[s] of ingress and egress" while determining whether sufficient language existed to constitute an express easement (internal quotation marks and citation)); *cf.* Restatement (Third) of Property: Servitudes § 4.10 cmt. c, illus. 1 (2000) ("[T]he owner of [an easement is] entitled to use the road [twenty-four] hours a day by any form of transportation that does not inflict unreasonable damage or unreasonably interfere with the enjoyment of [the property].").

{25} Additionally, the district court's reliance on historic use in creating an all-inclusive list of permissible uses of the easement is a misapplication of the law of appurtenant easements. Although historic use is a valid and, indeed, necessary consideration in determining the scope of a prescriptive easement, we have found, and the district court and Plaintiff's counsel directs us to, no case law that considers historic use determinative in defining the scope of an express and unambiguous appurtenant easement. *Maloney v. Wreyford*, 1990-NMCA-124, ¶ 15, 111 N.M. 221,

804 P.2d 412 ("The rule is that the extent of a *prescriptive* easement is established by its historical usage." (emphasis added)).

**C. Division of the Easement's Dominant Estate**

{26} Last, we conclude that the easement still serves the entire dominant estate, now comprised of Tracts 5B and 5C. "An appurtenant easement runs with the land to which it is appurtenant . . . and passes with the land to a subsequent grantee with passage of the title." *Skeen*, 2009-NMCA-080, ¶ 22 (omission in original) (internal quotation marks and citation omitted). "[A]n appurtenant easement cannot be assigned in the absence of a transfer of the dominant estate[.]" *Kikta*, 1988-NMCA-105, ¶ 11. Generally, "a right of way appurtenant to land is appurtenant to every part of it, and if the owner divides it into several lots, the grantee of each lot has an equal right over the servient land even though the subdivision does not abut upon such right of way[.]" R.W. Gascoyne, Annotation, *Property Which Does Not Abut Upon Right of Way—Easement By Necessity Over One Part of Dominant Tenement To Reach Right of Way Appurtenant To Entire Tenement*, 10 A.L.R.3d 960, § 5[b] (1966). "[B]enefits and burdens of appurtenant servitudes are not affected by the subdivision of either the benefited or burdened property." Restatement (Third) of Property: Servitudes § 5.7 cmt. a (2000). "[U]pon transfer of a part of a dominant tenement having appurtenant thereto a right of way over a servient tenement, the new owner of

15

the transferred part of the dominant tenement acquires a right to use the right of way over the servient tenement." R.W. Gascoyne, Annotation, *General Rule That Subsequent Owner Has Right To Use Right of Way*, 10 A.L.R.3d 960, § 3 (1966); *see* James W. Ely, Jr. & Jon W. Bruce, *The Law of Easements & Licenses in Land*: *Division of Easements Appurtenant* § 9:3 (2014) ("[T]he right to use an easement appurtenant extends to each subdivided portion of the dominant estate.").

{27} Jones moved to Tijeras in 1972. Jones bought Tracts 5B and 5C and built a home on what is now Tract 5C. In 1979, Jones purchased an easement to provide access to the present Tract 5B because that portion of his property was otherwise inaccessible via the existing roads. The existence of both Tracts 5B and 5C was known to Clarke at the time the easement was sold. However, at trial, the district court, in the absence of evidence to support it, summarized its finding, stating that "regardless of who owns the property, the easement was sold for the benefit of one family, not two." The district court also stated that the easement "was intended to benefit one family because only one family existed at the time." The district court cited no legal principle to support this conclusion and, in light of the foregoing stated principles and easement provision extending benefit of the easement to families, heirs, and assigns, we are aware of none that would permit it. The district court's

16

judgment concludes that "[t]he dominant estate does not, as a matter of law, belong to both Intervenors." We disagree.

{28} The district court's reasoning that the easement was intended to benefit a single family mischaracterizes appurtenant easements. They benefit the land that comprises the dominant estate, rather than individual owners as the district court's reasoning suggests. *See* 28A C.J.S. *Easements* § 17 (2014) ("The benefit of an appurtenant easement can be used only in conjunction with the ownership or occupancy of a particular parcel of land."). Jones did not attempt to assign the right to use the easement separately from the dominant estate, but only made a valid transfer of title of a portion of the dominant estate. There is nothing in our case law to suggest the division of the dominant estate alone extinguishes the rights to the easement and, under the facts presented at trial, the easement remains appurtenant to the entire dominant estate regardless of the division of ownership. We hold that the partition of a dominant tenement alone does not extinguish an easement. We now turn to whether the district court properly determined the increased number of dominant estate owners constitutes an undue burden on the servient estate.

**D.     Additional Burden of Two Dominant Estates**

{29} "The owner of the dominant estate cannot change the extent of the easement or subject the servient estate to an additional burden not contemplated by the grant

17

of easement." *Kikta*, 1988-NMCA-105, ¶ 14; *Stout v. Christian*, 593 S.W.2d 146, 150 (Tex. App. 1980) (stating that the servient estate is subjected to additional burden when "use of the servient estate is curtailed, or destroyed, by the manner in which the easement is used"). Similarly, "easements created to benefit a dominant estate . . . cannot be expanded, changed, or modified without the express consent of the servient estate." *Camino Sin Pasada*, 1994-NMCA-164, ¶ 14. A right of way to divided land, as described above, exists "only if the easement can be enjoyed as to the separate parcels without any additional burden upon the servient tenement." 10 A.L.R.3d 960, § 4 (1966). An "increase in the number of persons holding the benefit of the servitude alone does not constitute an unreasonable increase in the burden[.]" Restatement (Third) of Property: Servitudes § 5.7 cmt. c.

{30} The problem in this regard proceeds from the district court's consideration of irrelevant evidence. The district court stated: "I certainly don't have any evidence from which I can draw a conclusion that . . . [Clarke] intended to . . . benefit[] two households." Similarly, the district court declined to acknowledge both Intervenors as dominant estate owners and stated: "I don't have any evidence, zero evidence to expand the scope of the easement." Ultimately, the district court held that "[t]he dominant estate has no authority to expand the historic use, boundaries[,] or existing cleared portion of the easement" and that the dominant estate owner therefore could

18

not cut any trees or bring heavy construction equipment on the easement. In total, the easement was to "remain as it was before the lawsuit[,]" and Plaintiff's fence could remain within the easement. Contrary to the district court's reasoning, there is no expansion of the easement's use to be considered in this case. The relevant inquiry in determining whether an additional burden exists lies not in whether the parties intended the division of, or increased burden from, the dominant estate, but whether the division created an additional burden on the servient estate.

{31}     As explained above, the division of a dominant estate does not generally create an unreasonable additional burden. Rather, the relevant inquiry lies in whether any evidence existed that the scope and use of the easement had increased since the sale or division of the dominant estate. Rather than look for "evidence to expand the scope of the easement[,]" to restrict a valid easement, the district court was obligated to determine whether Intervenors were entitled to a finding of no additional burden based on the testimony given. After reviewing the testimony, we conclude that the district court's finding of an additional burden is not supported by the testimony, and the testimony does not lend the substantial support necessary for us to uphold the district court's decision.

{32}     The nature of the evidence presented at trial suggests that the easement in this case is not being expanded, changed, or modified in any way by the division of the

19

dominant estate. While the district court used Jones's testimony as evidence of "historic use" that determined intent, it seems to have been more pertinent to the issue of additional burden. For example, the majority of Jones's testimony on historic use came in response to counsel's question regarding the *frequency* of use and *type* of property being accessed. Counsel's follow-up question—whether the previously described frequency of use of the previously described property had increased—reveals that both the question asked and the answer given were more relevant to the issue of additional burden than the intent of the parties. Jones testified that there had been no change to the use of the easement since it was purchased in 1979.

{33}     Long also testified regarding the use of the easement. He testified that he had never driven on the easement, and there have been no changes to his use of the property since he purchased Tract 5C. Jones testified that there had been no changes in his use of the property since he sold Tract 5C to Long in 2009. Long's property is accessible from a public road. The easement is still the same twenty feet in width that it has been since 1979 and is appurtenant to the same dominant estate as it was in 1979. The division of the dominant estate has not changed the amount of benefited land or the size of burdened property. The easement is also not modified by the division. It is still used for ingress and egress of household and non-commercial

20

purposes as was intended by the 1979 agreement. In light of this evidence, and absent any evidence whatsoever that the use of the easement has changed, we cannot hold that the district court's finding of an additional burden to the servient estate is rationally based on the evidence.

{34} The easement in question can be appurtenant to two dominant estates without expanding, changing, or modifying the burden on the servient estate. We therefore reverse the district court's ruling regarding the ownership of the dominant estate.

**III.   CONCLUSION**

{35} Rather than limiting itself to the unambiguous terms of the easement as it should have done in construing the parties' intent and, thereby, the scope of the easement, the district court relied on historic use of the dominant estate to determine how the easement and dominant estate should be used. According to the unambiguous written agreement, the easement was intended to be twenty-feet wide. Plaintiff's fence currently prevents access to the full twenty feet of the easement. Plaintiff is therefore required to remove her fence from the easement, so as to effectuate the intent of the parties. The district court's judgment regarding the scope of the easement is therefore reversed.

{36} The district court also determined that the division of the dominant estate constituted an impermissible additional burden on the servient estate. Because the

21

division of the dominant estate did not constitute an expansion, change, or modification to the easement, we reverse the district court's decision. Both Intervenors own the dominant estate and possess the right of ingress and egress for household and non-commercial purposes over the easement. We remand for proceedings consistent with this Opinion concerning the fate of the trees within the fence, and such other matters as may be required by this Opinion.

{37} **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**JONATHAN B. SUTIN, Judge**



20 FT EASEMENT

11 FT

9 FT

MAYER
TRACT 5-1B

Jones Easement
blocked by fence
erected by Mayer is
shown in red

20 EASEMENT

Orange line is the crest of a
boulder strewn 200 foot 35
degree slope. Tract 5B is
accessible only via the
Easements established by
Jones in 1979 around Tracts
5-1B and 5A.

NORTH

TO SKYLAND BLVD,
A COUNTY ROAD

ELECTRIC GATE

EASEMENT SHARED BY
ALL TRACT OWNERS

SMITH
TRACT 5-1A

TRACT 5-2

MAYER
TRACT 5-1B

BACA

TRACT 5A
DUFF
(SHOWS)

20' X 30'
EASEMENT

TRACT 5B
JONES

TRACT 5C
LONGS
(JONES)

**APPENDIX A**

F